MICHAEL E. PASKO, Plaintiff-Appellee, *v.* COMMONWEALTH EDISON COMPANY, Defendant-Appellant.—(CHICAGO & WESTERN INDIANA RAILROAD COMPANY *et al.*, Defendants.)

(No. 56545; ▮▮▮▮▮▮▮)

First District (3rd Division)—September 13, 1973.

Harry I. Parsons, of Chicago, (Dom J. Rizzi and Philip J. McGuire, of counsel,) for appellant.

Sidney Z. Karasik and James F. Gorman, both of Chicago, (Gary E. Dienstag and Stuart N. Litwin, of counsel,) for appellee.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

Commonwealth Edison Company [defendant] appeals from a judgment rendered against it on a verdict for $155,000 in a suit by plaintiff, an employee of the A. A. Electric Company, an independent contractor. The plaintiff sought damages for injuries he sustained while installing electric poles for his employer in accordance with its contract with defendant. The Chicago & Western Indiana Railroad Company, the Erie-Lackawanna Railroad Company, and the Monon Railroad Company were also made defendants, but directed verdicts were entered in their favor at the close of the plaintiff's evidence.

Defendant contends it owed no duty to plaintiff to provide him with a safe place to work, to warn him of dangers which were apparent to all, or to require the use of metal liners, caissons, or shoring in the excavations for the electric poles. Defendant also contends that the plaintiff was guilty of contributory negligence as a matter of law, and that the verdict and answers to two special interrogatories submitted to the jury are against the manifest weight of the evidence. The facts follow.

In July of 1964, plaintiff was employed as a journeyman lineman with the A. A. Electric Company and, according to his testimony, was experienced in working in all types of soil conditions. A. A. Electric Company, pursuant to its contract with the defendant, undertook to install a series of electric poles in the vicinity of 126th Street and Torrence Avenue, in Chicago. The poles were to be supplied by defendant and installed at predetermined points according to defendant's specifications, and A. A. Electric Company was to furnish labor and equipment necessary to complete the operation. Clause 9 of the contract has particular relevance to the issues, and is presented in substance as follows:

The contractor agrees to carry on the Work in a proper, safe and secure manner with the utmost care so as to prevent loss, injury or damage to the Owner's property or the property on the Premises and/or surrounding property, and so as to prevent danger to the lives or persons of individuals, and, if in the opinion of the Engineers the Work is not being so carried on, they may order the Work stopped immediately and not resumed until, in their opinion, proper means and methods have been adopted by the Contractor to insure the carrying on of the Work so as to prevent such threatened loss, injury, damage or danger. The Owner reserves the right, however, to order the Work stopped whenever the Work interferes or threatens to interfere with the operation of the Owner's equipment until such interference is eliminated. All equipment used on the Premises shall be in first class condition and any equipment which, in the opinion of the Owner or the Engineers, shall be considered inadequate or unsafe, shall be removed at the expense of the Contractor. The Contractor shall provide and maintain all passageways, guard fences, lights and other facilities, for protection required by the Public Authorities or rendered reasonably necessary by local conditions, also all barricades for the Work at all times, also for all openings during construction as required by any Public Authority, and shall erect proper shelters wherever necessary so as to properly protect the Work from damage. All barricades shall be so arranged as to insure the safety of the workmen and passersby and shall be kept painted with paint or a color approved by the Engineers. The Contractor shall plank over openings instead of providing barricades around openings, where, in the Owner's opinion or the opinion of the Engineers, the progress of the Work will be benefitted. All safety barricades and planking shall be installed to the satisfaction of the Engineers. * * * The Clause shall not be construed as implying any responsibility on the part of the Owner or the Engineers with regard to securing the safety of the work.

During the trial the plaintiff's attorney was allowed, over objection by defendant, to read Clause 9 to the jury.

Harry Pock (also spelled Pak), an employee of defendant, was assigned to the project as an inspector. Plaintiff testified that he saw Pock at the jobsite twice each day during the four to six-week period prior to plaintiff's injury. He further testified that John Noga, A. A. Electric Company's foreman, directed the placement of the poles, and that Pock merely inspected a pole after it was installed to insure that it was properly

aligned, braced, and sunk to the right depth. Eldrid Johnson, a claim adjuster for defendant, testified that defendant provided no representative at the jobsite to stop the work if unsafe procedures were employed.

Immediately west of the line of poles being installed were railroad tracks owned by the Chicago & Western Indiana Railroad Company and also leased for use by other railroads, including the Erie-Lackawanna and Monon Railroads. These tracks were frequently traveled, and at points, ran as close as 40 to 50 feet from the projected line of poles to be installed. The soil in this area was loose and sandy where the poles were being placed.

Donald R. Delaney, defendant's field engineer, testified that prior to the commencement of work by plaintiff's crew, he visited the area to determine the best possible route for the line of poles. He stated that, although he took note of the topography, in making his decision as to the placement of the poles, he did not consider the condition of the soil or the effect the passage of trains would have on the soil.

The poles were installed by first excavating a hole with a truck-mounted auger; then the pole would be inserted into the hole by a crane, and the hole backfilled with dirt and concrete. The depth and width of the holes varied according to the length of the pole to be inserted. These ranged in length from 45 to 100 feet. Once a hole was excavated it would then be measured for proper depth. Occasionally, plaintiff or another member of the crew would climb down into the hole to expedite the measurement.

On July 29, 1964, plaintiff's crew experienced difficulty in digging these holes. Because of the sandy condition, dirt would pour back into the excavations. To remedy this a member of the crew would have to climb down into the hole and remove the backflow with a shovel. Plaintiff testified that vibrations resulting from passing trains caused the ground to quiver, and this quivering contributed to causing cave-ins of the excavated holes. Plaintiff further testified that Harry Pock was in the immediate area when these cave-ins occurred.

On the morning of July 29, 1964, the crew had installed three poles on level ground, and there was a cave-in with the third hole. Before noon on that day, after a fourth hole was excavated to a depth of six feet on the slope of a sandy railroad track embankment, a cave-in occurred, and this hole was re-augered to a depth of seven feet. After the crew returned from lunch, this hole was again deepened to nine feet, and another cave-in occurred which could not be alleviated by the auger because the hole had now become nine feet wide. Plaintiff volunteered to climb down into the hole and dig out the backflow, and after completing the task he climbed back to level ground. At this point another

vibration in the ground caused two shovels of dirt to fall back into the hole. John Noga ordered the plaintiff to go back down into the hole and remove the dirt. Plaintiff said, "Well, I'll tell you John, when that ground quivers, before you can say Jack Robinson it's gone." Nevertheless, plaintiff obeyed Noga's order and again descended into the hole. He testified he did so because he felt that a foot of dirt was not too much to clean up, and it was part of his job. As he began to shovel out the dirt, one side of the hole caved in and buried him up to his knees. Another cave-in immediately followed and this buried him up to his chest. Plaintiff remained pinned in the hole with tremendous pressure bearing on his back and legs, until he was extricated an hour later by members of his crew and the fire department. As a result of this cave-in, a degenerative condition developed in plaintiff's back which, after unsuccessful corrective surgery, culminated in permanent disability.

The plaintiff, together with Noga and Louis Schoenberger, another A.A. Electric Company foreman, testified that in July 1964, a cave-in of the nature that injured the plaintiff could have been prevented by the use of steel casings or shoring in these excavations.

At the close of plaintiff's evidence the court directed verdicts in favor of Chicago & Western Indiana, the Erie-Lackawanna, and the Monon Railroad companies. Defendant's motion for a directed verdict was denied and its subsequent motion to strike certain parts of the complaint was also denied. Defendant offered no evidence, and the cause was submitted to the jury on plaintiff's evidence alone.

Among the various instructions given the jury, one which was tendered by the plaintiff without objection by defendant, provided:

> "In considering the conduct of defendant Commonwealth Edison, you may consider the extent of its control and supervision of the project, its right to inspect the work, to order stoppage of the work and to prevent resumption until proper means and methods have been adopted by the persons doing the work to prevent injury or damage."

Another instruction, also tendered by plaintiff but objected to by the defendant, informed the jury of the specific allegations of negligence pleaded by the plaintiff. However, in stating its fifth specific allegation of negligence on the part of the defendant, plaintiff deviated from the language of the complaint and stated that defendant was negligent in failing to require the use of metal liners, sheets or caissons, supports or shoring to prevent earth from falling into the excavations. In the complaint itself, the fifth allegation of negligence stated that the defendant was negligent in not providing these materials to prevent earth from falling into excavations.

In addition to its general verdict the jury was tendered and answered two special interrogatories. The first was on the question of whether the plaintiff was guilty of contributory negligence which was a proximate cause of the occurrence. The jury found the plaintiff not guilty of such negligence. The second interrogatory was whether the defendant was guilty of negligence which was the proximate cause of the occurrence. The jury found that the defendant was guilty of such negligence.

In his complaint plaintiff alleged several acts of negligence by the defendant, including the failure to provide safety devices for use in the excavations undertaken. However, evidence as to defendant's right to require that such devices be used in the operations was introduced at the trial in the form of Clause 9 of defendant's contract with A.A. Electric Company. Obviously, the only purpose for which this clause was introduced by plaintiff was to show that the defendant had the right to supervise the safety procedures employed on the project and to order corrective methods where and when it thought them necessary. Although a deviation from the wording of the complaint, the instruction concerning defendant's failure to require safety devices—rather than his failure to provide such devices—was a proper reflection of an issue which had been raised during the course of the trial, and as to which evidence had been presented. (*Woman's Athletic Club v. Hulman,* 31 Ill.2d 449.) Defendant apparently recognized the correctness of submitting this issue to the jury as it did not object to plaintiff's instruction which allowed the jury to consider defendant's conduct in light of its supervision rights under Clause 9 of the contract. Moreover, in its brief, defendant does not argue the impropriety of this deviation from the language of the complaint, but instead maintains that under the facts adduced it had no duty to require plaintiff's employer to use safety devices in the excavation operations.

Defendant urges that the evidence fails to disclose any factual basis which could give rise to the imposition of any duty upon it toward the plaintiff. Specifically, defendant denies that it was under a duty to provide the plaintiff with a safe place to work, to warn the plaintiff of dangers involved in the excavation operations which were of a nature obvious to all, or to require that plaintiff's employer use safety devices in its excavation operations.

■■■ As a general rule, an employer of an independent contractor is not liable for the acts or omissions of the latter. (*Gomien v. Wear-Ever Aluminum, Inc.,* 50 Ill.2d 19; *Kuhn v. Goedde,* 26 Ill.App.2d 123; *Johnson v. Central Tile & Terrazzo Co.,* 59 Ill.App.2d 262.) An exception to this general rule provides that one who entrusts work to an independent contractor, but who retains control of any part of the work, is liable for

injuries caused to persons to whom the employer owes a duty of reasonable care, where the injuries result from his failure to exercise that right of control with reasonable care. (Restatement (Second) Torts § 414.) This section and the comments thereto have been recognized as an expression of Illinois law. (*Larson v. Commonwealth Edison Co.,* 33 Ill.2d 316; *Weber v. Northern Illinois Gas Co.,* 10 Ill.App.3d 625, 295 N.E.2d 41.) It is stated in the comments to section 414 that an employer who retains merely the general right to order the work stopped or resumed, to inspect its progress or receive reports, to make suggestions or recommendations which need not be followed, or to prescribe alterations and deviations, cannot incur liability under this rule. Such general rights, it is stated, are usually reserved to employers. Before an employer can be subjected to liability under this rule there must be such a retention of a right to supervise that the contractor is not entirely free to do the work in his own way. The power to forbid work from being done in a manner likely to be dangerous to himself or others is given as an illustration of the type of power retained by an employer which could subject him to liability. An employer may therefore be held accountable if he knows—or through the exercise of reasonable care should have known—that the work of the independent contractor is being carried out in a dangerous manner, and has an opportunity to prevent it by the exercise of the power of control which he has retained in himself but takes no action.

In *Weber v. Northern Illinois Gas Co., supra,* an employee of an independent contractor sued the defendant for injuries he sustained during the installation of gas pipes for the defendant. The contract between defendant and plaintiff's employer gave the defendant the right to order the work stopped until, in its opinion, proper means and methods were used to prevent injury to any individual; to order unsafe or inadequate equipment removed from the jobsite; and to order the removal of any workman whom the defendant designated as unfit or unskilled. A supervisor the defendant had assigned to the jobsite testified that he knew the plaintiff's employer was using inadequate equipment to lay the pipe; that he knew he had authority to order the removal of this equipment, but that he took no action to do so. The plaintiff was injured while helping to lay pipe with this inadequate equipment. The court, in reversing a summary judgment for the defendant, cited Restatement (Second) Torts § 414, and held that although no master-servant relationship existed between defendant and plaintiff's employer, a real question of fact was presented as to whether the defendant had retained enough control over the safety of the work as to be liable for a failure to properly exercise that control.

■■ In the instant case Clause 9 of its contract with A.A. Electric Company gave to defendant virtually the same rights to control the safety of the work here involved as were retained by the defendant in *Weber*. Defendant could order the work halted if it felt that unsafe procedures were being followed, and could prevent the work from being resumed until, in its opinion, proper means and methods were employed to avoid injury or property damage. Defendant could order that any of A.A. Electric Company's equipment be removed from the jobsite if, in its opinion, such equipment was unsafe or inadequate. Also, defendant reserved the right to approve the color of paint applied to all barricades, to order planking substituted for barricades when it felt such was necessary, and to approve the installation of all barricades and planking. Under the authority of *Weber* it was, at the very minimum, a question of fact for the jury as to whether the defendant had retained sufficient control over the safety aspects of the project as to be liable for a failure to properly exercise that control. Furthermore, under the authority of the *Weber* case, the final sentence in Clause 9 of defendant's contract which disclaims responsibility for the exercise of its power of supervision over the safety of the work is of no force and effect, as it constitutes an invalid attempt to divest one's self of a non-delegable duty.

■■ Plaintiff testified that defendant's inspector visited the jobsite twice daily and was present when the excavation cave-ins began. He further testified that this representative of the defendant would check the installation of the poles to insure compliance with defendant's specifications, a function which would appear inexorably intertwined with the excavations for the poles. It is not clear, however, whether defendant's inspector was authorized to oversee the safety procedures followed on the project. Defendant's claim adjuster testified that as far as he knew, the defendant had no one at the jobsite who was authorized to supervise safety procedures. Regardless of whether or not defendant maintained someone at the scene who was authorized to insure the safety of the project, the jury could be justified in finding defendant liable, assuming that it had first determined that defendant had retained enough control over the project to be bound to use reasonable care in exercising that control. If defendant's inspector was authorized to supervise the safety procedures and took no action after receiving notice of the cave-in problems, his failure to act would subject defendant to liability. On the other hand, if defendant had no personnel at the scene for this purpose, the jury could find that it did not exercise reasonable care in using its power of control to prevent unsafe means and methods of excavation as it failed to consider soil conditions and ground vibrations in its designation of where the poles were to be placed, and after the work was com-

menced it failed to inspect the site to discover if unsafe means and methods of excavation were being used.

■■ The evidence supports the submission to the jury the question of whether defendant was negligent in failing to require that metal liners, sheets or caissons, supports or shoring be used in the excavation work undertaken by plaintiff's employer. Moreover, the manifest weight of the evidence is not contrary to the jury's verdict and its answer to the special interrogatory as to whether the defendant was guilty of negligence which was the proximate cause of the occurrence.

In view of our determination as to the sufficiency of the allegation that defendant was negligent in failing to require plaintiff's employer to use safety devices in these excavations and the sufficiency of the evidence as to that allegation, it is not necessary to pass upon the various other specific allegations of negligence in plaintiff's complaint. (Ill. Rev. Stat. 1971, ch. 110, par. 68(4).) We proceed to a consideration of defendant's contentions that the jury's answer to a special interrogatory as to whether plaintiff was guilty of contributory negligence was against the manifest weight of the evidence, and furthermore, that the plaintiff was guilty of contributory negligence as a matter of law.

In the instant case plaintiff, knowing of the possibility of a cave-in, volunteered to climb down into the hole and shovel out a quantity of dirt which the auger could not remove. He was successful in removing this backflow and extricating himself without incident. He entered the hole a second time after two shovelsful of dirt had fallen back into it. His second descent into the hole was not as a volunteer but rather, was in compliance with the order of his foreman, John Noga. The plaintiff testified that he re-entered the excavation because the amount of dirt to be removed was small, and because he felt it was part of his job.

■■ A master and a servant are not on altogether equal footing. When a servant acts in compliance with a command of his superior, and the servant knows that the performance of the act is attended by some degree of danger, he is not required to balance that degree against his duty of obedience and then decide with absolute certainty whether he must do the act or refrain from doing it. His knowledge of the attendant danger will not defeat his recovery if in obeying the command he acts with that degree of care that a reasonable man would exercise in like circumstances. *Anderson Pressed Brick Co. v. Sobkowiak*, 148 Ill. 573.

■■ In the case before us the plaintiff had succeeded in clearing the hole on his first descent without mishap. The jury could have determined from the evidence that the possibility of a serious cave-in was not so certain as to make the plaintiff's act of descending into the hole a second time reckless. Whether a servant acted recklessly in obeying his master's

orders, or whether he acted as an ordinary reasonable man should have acted is a question for the jury. *Illinois Steel Co. v. Schymanowski*, 162 Ill. 447.

Defendant cites *Fore v. Vermeer Manufacturing Co.*, 7 Ill.App.3d 346. In that case an experienced trenching machine driver, with full knowledge that a brake failure in a particular machine he had been using was a practical certainty, operated such machine and was injured when the brakes did in fact fail. The instant case is distinguishable in that the danger of a serious cave-in was not so certain or imminent as the danger of a brake failure was in the *Fore* case. The possibility of a serious cave-in was not such as to make the plaintiff's act unquestionably reckless.

Defendant also cites *Reid v. Employers' Mutual Liability Insurance Co.*, 14 Ill.App.3d 174. In that case the plaintiff, a press and wash-up man with 18 years of experience, was injured when his hand caught in the rollers of a printing press as he attempted to clean those rollers while the machine was in operation. The appellate court, in reversing a judgment for the plaintiff, held that even where an employee is acting under the general direction of a superior, if he is given discretion as to the manner in which to perform his duties and he chooses a more dangerous method when safer alternatives are available, he is guilty of contributory negligence as a matter of law. The instant case is distinguishable in that here the plaintiff was acting under the specific direction of his foreman when he entered the excavation for a second time. He was given no discretion as to the means by which to remove the backflow from the hole, and it does not appear that any alternative means were available to him.

The answer of the jury to the special interrogatory concerning plaintiff's contributory negligence prevails unless it is contrary to the manifest weight of the evidence. (*Houston v. Leyden Motor Coach Co.*, 102 Ill. App.2d 348.) It is our conclusion that the answer to the special interrogatory is not contrary to the manifest weight of the evidence.

The defendant's contention that the plaintiff was guilty of contributory negligence as a matter of law is without merit.

Judgment affirmed.

DEMPSEY, P. J., and McNAMARA, J., concur.