BARBARA CLAUDY, Indiv. and as Adm'x of the Estate of Keith Claudy, Deceased, *et al.*, Plaintiffs-Appellants, v. THE CITY OF SYCAMORE, Defendant-Appellee (Commonwealth Edison Corporation, Defendant).

First District (2nd Division) No. 87—877

Opinion filed May 17, 1988.

Bernard R. Nevoral, of Bernard R. Nevoral & Associates, Ltd., and Steven B. Belgrade and Thomas J. Murphy, both of Andich & Belgrade, both of Chicago, for appellants.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff appeals the trial court's order granting summary judgment in favor of defendant City of Sycamore, arguing that questions of fact exist for a jury to decide. We reverse and remand this cause for trial.

Plaintiff's decedent, Keith Claudy, an employee of AAA Tree Service, was electrocuted when he came into contact with electrical power lines while cutting down a tree located in the City of Sycamore. At the time of Claudy's death, the Department of Public Works of the City of Sycamore was responsible for trimming and removing trees owned by the city. Russell "Babe" Worden, superintendent of public works, testified at his deposition as to the procedure used to remove trees. Each year employees of the department of public works determined which trees were dead and would mark them for removal. If a tree designated for removal was able to "free-fall," *i.e.*, fall to the ground without striking another object, the department of public works removed the tree; if there were obstructions to a free fall, such as power lines or a house, the city hired AAA Tree Service or another independent contractor to remove the trees.

Although AAA had been removing trees for the city for approximately five years at the time of Claudy's death, no written contract was used between the parties; rather, a bid was submitted for each job and payment was made as the tree service completed its tasks.

At the time of Claudy's death, the city's policy with regard to trimming and removing trees near electrical wires was to contact Commonwealth Edison Company and have the electrical wires dropped to the ground or taken out of service before beginning work. Although the deposition testimony is not clear, it is suggested that this policy was limited to the city's own workers and did not apply to AAA Tree Service. Under such policy, Worden decided whether to bring in Commonwealth Edison if city workers were removing or trimming a tree near electrical wires. Larry Jones, the owner of AAA Tree Service, deposed that it was his responsibility to contact Commonwealth Edison if in his judgment power lines needed to be shut down in an area in which AAA was working.

In his deposition, Jones testified that Worden visited the jobsites on a regular basis to check the progress of the work being performed when AAA was doing work for the city. Jones also stated that Wor-

den was not present "in a supervisory way" but was present to oversee that "everything was alright and that [AAA Tree Service] had no problems." Jones further testified that no one from the city had ever supervised his tree-trimming operations, and noted that although the city was aware of the time frame within which AAA would do a particular job, it was not aware of the times and locations for the purpose of supervision. However, when Worden made inspections of the jobsite, he had the power to stop work or fire employees of AAA Tree Service if he felt a job was not being done properly.

In July of 1979 the city took action to remove a tree because it was hollow and dying. Because of the size of the tree, described as "very tall," "65 to 70 feet high," "large," and approximately nine feet in diameter, and because it was not a "free-fall," as power lines were in the way, AAA Tree Service was retained by the city to remove it. The electrical wires were clearly visible and were located three to four feet from the closest limb of the tree.

Jones acknowledged that he knew the electrical wires were dangerous, but stated that he felt "that particular tree *** could have been removed with no problems." He also acknowledged that it was his responsibility to call the power company if the limbs were too close to the wires.

At the time of the accident, Claudy was acting as the "climber" of the crew, and, after climbing the tree, was using a power saw to shear off its branches. He was tied into the tree by a "saddle," which was made of rope and forms a harness around the body of the climber. He was wearing boots with cleats to dig into the tree to facilitate his climb. The accident occurred when Claudy was attempting to trim the limb closest to the electrical wires. No one saw Claudy come into contact with the wires, but Jones heard "the crackling of wires," looked up, and saw Claudy in the wires. While in contact with the wires, Claudy caught fire and was electrocuted.

Claudy's widow brought suit, alleging that the City of Sycamore was negligent in that it:

"(a) Negligently and carelessly directed plaintiff's decedent to trim trees in an area where the defendant knew or should have known was extremely dangerous by virtue of the uninsulated power lines situated in the area:

(b) Failed to adequately warn plaintiff's decedent of the dangers at the aforementioned location;

(c) Failed to direct co-defendant COMMONWEALTH EDISON COMPANY to terminate the power to the aforementioned lines while said tree trimming was being performed; and

(d) Was otherwise careless and negligent."

In January 1987 the trial judge, although admitting that he did not think "the matter is one hundred percent free from doubt," granted the city's motion for summary judgment.

OPINION

■ Plaintiff first argues that the trial court erred in failing to find that "shearing limbs from a large tree located within three feet from high voltage, uninsulated electrical wires is an inherently dangerous activity," and in failing to find that the City of Sycamore had a nondelegable duty to ensure the safety of its contractor's employees because an inherently dangerous activity was involved. Under Illinois law, the employer of an independent contractor can be liable for the injuries of the contractor's employee which result from the performance of inherently dangerous activities. *Clark v. City of Chicago* (1980), 88 Ill. App. 3d 760, 410 N.E.2d 1025; see also *Fried v. United States* (N.D. Ill. 1983), 579 F. Supp. 1212.

In support of her argument that trimming and removing trees near electrical wires constitutes an inherently dangerous activity, plaintiff relies on the Restatement (Second) of Torts, which provides that one who employs an independent contractor to do work involving a recognizable danger is subject to liability for failure to take precautions against such danger. Restatement (Second) of Torts §§416, 427 (1965); see also *Johnson v. Central Tile & Terrazzo Co.* (1965), 59 Ill. App. 2d 262, 276-77, 207 N.E.2d 172 (If one employs another to do work which he should recognize as involving some peculiar risk to others unless special precautions are taken, the one doing the employing will remain liable if harm results because these precautions are not taken); *Donovan v. Raschke* (1969), 106 Ill. App. 2d 366, 370, 246 N.E.2d 110 ("[T]he proper test to be applied concerning the liability of an owner for the act of negligence of an independent contractor is whether there was sufficient evidence presented so that the trier of fact could determine that the work to be done was a probable and foreseeable source of injury to a party such as plaintiff unless proper precautions were taken").

Plaintiff contends that removing trees does involve a peculiar risk of "physical harm unless special precautions are taken" and that the city was well aware of the extreme danger involved in such activity. Her argument continues that the primary reason the city retained AAA to remove the tree was because of its nearness to the electrical wires and because the city was familiar with the dangers of working near wires, as it had developed a policy to have power lines dropped

or taken out of service before attempting to trim or remove a tree located near electrical wires.

The city responds that removing and trimming trees is not an inherently dangerous activity and argues that the term "inherently dangerous" means the type of danger that is part of the activity "itself at all times, requiring special precautions to prevent injury, and does not mean danger that arises from the collateral negligence of others." (*Spivey v. Brown* (1986), 150 Ill. App. 3d 139, 144, 502 N.E.2d 23; see also *Fallon v. Indian Trail School* (1986), 148 Ill. App. 3d 931, 500 N.E.2d 101; *Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 400 N.E.2d 934; Restatement (Second) of Torts, §520 (1965).) Here, the city concludes, the tree could have been removed safely, and so removing it was not an inherently dangerous activity.

■ Plaintiff urges this court to find, as a matter of law, that the activity in question is an inherently dangerous activity; the city maintains that we, again as a matter of law, must find that it is not. We need make neither finding in order to decide this case, as we agree with plaintiff's argument that the city may be liable even if the decedent was not engaged in an inherently dangerous activity.

Plaintiff contends that the city retained sufficient control over AAA Tree Service so as to be liable for the independent contractor's negligence. She notes that a representative of the city visited the work sites, had the right to stop AAA's work as well as the right to remove employees of AAA from the jobsite or fire them if he felt that they were not doing the job in a proper manner. The city responds that AAA Tree Service was hired for its expertise in removing trees, it was under no duty to supervise the actions of its expert, and it did not exercise or retain sufficient control to be found liable.

■ Generally, the employer of an independent contractor is not liable for the acts or omissions of the latter; however, an exception to this rule provides that an employer who retains control of any part of the work will be liable for injuries resulting from his failure to exercise his right of control with reasonable care. *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247; *Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 295 N.E.2d 41; *Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 302 N.E.2d 614; see also Restatement (Second) of Torts §414 (1965).

> "Before an employer can be subjected to liability under this rule there must be such a retention of a right to supervise that the contractor is not entirely free to do the work in his own way. The power to forbid work from being done in a manner likely to be dangerous to himself or others is given as an illus-

tration of the type of power retained by an employer which could subject him to liability. An employer may therefore be held accountable if he knows—or through the exercise of reasonable care should have known—that the work of the independent contractor is being carried out in a dangerous manner, and has an opportunity to prevent it by the exercise of the power of control which he has retained in himself but takes no action." *Pasko*, 14 Ill. App. 3d at 488.

In *Weber*, plaintiff sued defendant in negligence for injuries suffered while working on the installation of a gas pipeline owed by defendant. Under the terms of the contract between defendant and plaintiff's employer, an independent contractor, defendant's representatives had the right to stop work if the job was being done improperly and had the right to remove unskilled workers or unsafe equipment from the jobsite. Additionally, the contract required defendant to have a representative at the jobsite at all times. The representative required by the contract had previously instructed plaintiff's employer about using certain safety equipment. Holding that the negligence of the independent contractor was an intervening proximate cause of plaintiff's injury, the trial court granted summary judgment to the defendant. The appellate court reversed, citing section 414 of the Restatement, and stating:

"We conclude that a factfinder could determine that [defendant] met the standards of control expressed in the [Restatement]. It did retain the power to forbid the work being done in a manner dangerous to others. It did fail to prevent the subcontractor from doing the details of the work in a dangerous manner when it knew it was so being done. It had more power than to make only suggestions or recommendations, and it did retain such a right of supervision that the subcontractor was not entirely free to do the work in his own way." *Weber*, 10 Ill. App. 3d at 639.

In *Pasko*, plaintiff sought damages for injuries suffered while installing electric poles for his employer, an independent contractor, in accordance with its contract with defendant. That contract provided that defendant had the right to stop work if it was carried on in an unsafe manner as well as the right to remove unsafe equipment from the jobsite. Defendant reserved the right to approve the installation of all plankings and barricades, and to approve the color of paint applied to all barricades. At trial, the jury rejected defendant's argument that it did not owe a duty to provide a safe work environment. Plaintiff's award was affirmed on appeal.

"Under the authority of *Weber* it was, at the very minimum, a question of fact for the jury as to whether the defendant had retained sufficient control over the safety aspects of the project as to be liable for a failure to properly exercise that control. \* \* \*

\* \* \* Regardless of whether or not defendant maintained someone at the scene who was authorized to insure the safety of the project, the jury could be justified in finding defendant liable, assuming that it had first determined that defendant had retained enough control over the project to be bound to use reasonable care in exercising that control." (*Pasko*, 14 Ill. App. 3d at 489.)

Plaintiff also relies on a Sycamore city ordinance in effect at the time which authorized Commonwealth Edison to operate and maintain electric power throughout the city. In pertinent part, the ordinance provided as follows:

"Said Committee on Streets and Alleys, or such other duly authorized agent, of the Municipality is hereby authorized and directed to call upon the Grantee to, and the Grantee may of its own accord, cause the trees growing upon or overhanging all of the streets, alleys, avenues and other public places in the Municipality upon which electric light or power lines are erected hereunder to be trimmed from time to time in such manner that there shall be a proper clearance between the nearest wires on said lines and any portion of the trees. Said trees shall be so trimmed that none of the branches, twigs or leaves of said trees shall come in contact with or in any wise interfere with the wires or other equipment upon said lines. Said trees shall be trimmed under the supervision of said Committee on Streets and Alleys, or such other duly authorized agent, of the Municipality, by and at the expense of the Grantee."

■ Plaintiff contends that this ordinance authorized the city to supervise the tree-trimming work of AAA, and the fact that it may not have exercised its right to do so cannot be a basis to defeat liability. The city contends that the ordinance has nothing to do with tree removal by AAA and argues that the trial court correctly held that "the thrust of this ordinance is that they were supposed to keep the trees trimmed and away from the power lines and it was to be done at Commonwealth Edison's expense under the general supervision of the Village."

The purpose of the ordinance was to grant Commonwealth Edison authority to construct a system of energy distribution in the city and

to maintain that system. The trial judge was correct in holding that the ordinance does not address the issues in this case; however, he erred in granting defendant summary judgment.

 Summary judgment is appropriate only if there is no genuine issue of material fact in a case. A court must construe the pleadings strictly against the moving party and liberally in favor of the opponent, and if the facts admit of more than one conclusion or inference the motion for summary judgment must be denied. (*Presto Manufacturing Co. v. Formetal Engineering Co.* (1977), 46 Ill. App. 3d 7, 360 N.E.2d 510.) "For summary judgment to be granted, the right of the moving party must be clear, free from doubt, and determinable solely as a matter of law." (*Marchiniak v. O'Connor* (1981), 102 Ill. App. 3d 381, 386, 430 N.E.2d 536.) Here, although the trial judge stated that he did not think "the matter is one hundred percent free from doubt," he nevertheless awarded summary judgment to the defendant. There was testimony that the city had retained some control over AAA Tree Service, and one need only retain control over any part of the work of an independent contractor to be held liable. (*Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 302 N.E.2d 642.) Accordingly , it is for a jury to decide whether defendant retained enough control over AAA to be held liable for plaintiff's decedent's death.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for trial.

Reversed and remanded.

STAMOS* and BILANDIC, JJ., concur.

---

*Judge Stamos participated in the decision of this case prior to taking office as a supreme court judge.