FIRST DIVISION

May 20, 2002

No. 1-01-1361

JOHN BIERUTA,             

         

Plaintiff-Appellant, 

v. 

KLEIN CREEK CORPORATION, 

Defendant-Appellee.

) Appeal from the 

) Circuit Court

) of Cook County

) 

) No. 98 L 00733

)

) The Honorable

) Sophia H. Hall,

) Judge Presiding.

JUSTICE COUSINS delivered the opinion of the court:

The plaintiff, John Bieruta, was injured at work on May 29, 1996, when he fell into an open trench.  He filed a complaint at law on January 21, 1998, against R.A. Faganel Builders, Inc., Savoy-Faganel, Inc., and R. Russell Builders, Inc.  On March 23, 1998, Bieruta amended his complaint to add Klein Creek Corporation (Klein Creek) as a party defendant.  Savoy-Faganel, Inc., was voluntarily dismissed on August 19, 1998, and R.A. Faganel and R. Russell Builders, Inc., were voluntarily dismissed on November 17, 1999.  Klein Creek is the sole defendant remaining in this action.  On March 7, 2001, Judge Sophia Hall granted Klein Creek’s motion for summary judgment.  Bieruta appeals.

BACKGROUND

On the morning of Wednesday May 29, 1996, John Bieruta suffered a back injury as a result of falling into a construction trench at building 22 of the Klein Creek townhouse development project.  Klein Creek was the owner of the site and the general contractor for the development.  Klein Creek, through its agents, hired all the subcontractors, including DuPage Topsoil (DuPage), the employer of the plaintiff, for whom Bieruta operated a backhoe.  

DuPage was directed by Klein Creek to excavate a trench for purposes of connecting water and sewer lines at building 22 of the Klein Creek townhouses.  The trench was excavated on May 25, 1996, and was left open from that time to the date of Bieruta’s accident on May 29, 1996.  During that time, it had rained and work was suspended on May 28, 1996.  Also, May 27, 1996, was Memorial Day and no work was done.  Bieruta testified that when he went back to work on May 29, 1996, he had to "dewater" the trench before he could begin work.  He observed a clump of clay near the sewer hookup, went down into the trench and removed the clay and exited the trench.  As he was exiting, a coworker called his name from behind him.  As Bieruta turned to look over his shoulder in the direction of the coworker, a portion of the edge gave way and he fell into the trench.  Bieruta claims that he was two feet from the edge of the trench when the ledge gave way, but all those present at the site did not recall seeing any indication that the trench gave way in any manner.  Estimates of the trench range from 6 to 10 feet in depth at its deepest part.  

One of the agents for Klein Creek was Michael Beaulieu.  Beaulieu was hired in February 1993 to oversee the Klein Creek development, consisting of 245 acres of land, 308 single-family homes, 108 townhouses and a golf course.  Beaulieu was acting as an owner’s representative and he was present at the site on a daily basis.  Beaulieu would advise the subcontractors, including DuPage, as to what work Klein Creek desired.  He would also give change orders to the subcontractors in the event that a homeowner requested a change in the specifications of his unit.  

DuPage employed Milton Dostal as a foreman who was present at the Klein Creek development during the time of the incident.  DuPage also employed Michael Wojciechowski as superintendent at the Klein Creek development.  Dostal testified that he spoke to Bieruta minutes before the accident.  He stated that Bieruta was standing on the tracks of his backhoe when he saw him.  Dostal told him to "get back in his machine before [he] he slipped or had an accident" and that "there was enough help so that [he] did not have to get out of [his] machine."  Wojciechowski testified that he was also present at the site on the day of the accident.  He stated that he was called after the accident occurred.  He testified that he told the employees of DuPage what their duties were going to be on a daily basis.  He also testified that he would receive orders from Klein Creek and Beaulieu regarding the excavating to be done.  

Louis Huggins and Paul Bentley, employees of DuPage, were also present at the site on the day of the accident.  Huggins testified that he found Bieruta curled up at the bottom of the trench.  He did not, however, see Bieruta fall into the trench.  Huggins also testified that he received his orders from DuPage alone.  Bentley testified that he was present but did not see Bieruta fall into the trench.  He also stated that his orders came from DuPage and no other.  

Joe Kleim is an owner of DuPage.  He testified in a deposition that DuPage made the decisions regarding whether  reinforcements were to be used in the excavating process, including trench boxes or shoring.  Kleim also stated that DuPage was responsible for the means, methods and safety of the DuPage employees.  He further testified that an independent safety coordinator was hired through his insurance company to inspect and train DuPage employees on issues regarding safety.  All DuPage employees, including Bieruta, testified that DuPage controlled the means, methods and techniques of the excavating and that the general contractor had no part of the excavating process. 

ANALYSIS

I

Bieruta claims that Klein Creek had a duty to exercise reasonable care under the circumstances for his safety because it owned the premises.  Plaintiff relies on section 343 the Restatement (Second) of Torts (Restatement (Second) of Torts §343 (1965)) (hereinafter Restatement), which states:

   "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

   (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

   (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

   (c) fails to exercise reasonable care to protect them against the danger."  Restatement (Second) of Torts §343 (1965).

There is also an exception to section 343.  Section 343A (1) of the Restatement states:

   "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."  Restatement (Second) of Torts §343 (1965).  

Bieruta implies that the possessor of the premises should have known that he could have been distracted and could have fallen into the trench.  He relies primarily on 
Deibert v. Bauer Brothers Construction Co.
, 141 Ill. 2d 430, 566 N.E.2d 239 (1990) for the proposition that a possessor of land is responsible to its invitees for injuries resulting from dangerous conditions when the invitee might be distracted and harmed despite knowledge of a dangerous condition. 

The 
Deibert
 case is distinguishable from the instant case.  The 
Deibert
 court found that a duty existed between the general contractor as possessor of land and the employee of a subcontractor.  
Deibert
, 141 Ill. 2d at 438.  The court in 
Deibert
 used the following factors to determine whether a duty existed:  the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against the injury, the consequences of placing that burden on the defendant and the possible seriousness of the injury.  
Deibert
, 141 Ill. 2d at 438.

In 
Deibert
, however, the supreme court found that the danger caused by ruts in the mud, although known and obvious, was foreseeable.  The possessor of land positioned the bathroom in a location where it knew others were throwing debris to the ground from above.  It was likely that one using the bathroom would look up instead of looking ahead and not see the danger posed by the ruts.  Furthermore, it would not be overly burdensome to move the portable toilets to a safer location.  
Deibert
 141 Ill. 2d at 438-39.

In the instant case, we are of the view that the trench, excavated by the defendant, was also known and obvious to him.  However, the distraction of which the defendant complains here, a coworker calling out his name, was not within the control of Klein Creek as was the distraction in 
Deibert
, 141 Ill. 2d at 438 (finding that it was reasonable to expect that defendant was aware that workers were throwing debris off balconies to the ground below and that it would distract those using the bathroom from the known and obvious danger of the ruts).  

Here, we find that it was not reasonable that Klein Creek would anticipate that a coworker calling out Bieruta’s name would distract Bieruta thereby causing him to fall into the trench.  In 
Deibert
, and the other cases mentioned by the plaintiff, the distractions were known to the possessor of the land or caused by the possessor.  We also note that Bieruta testified that the cause of his fall was due to the ledge of the trench "caving in," not as a result of being distracted by a coworker.  

Bieruta also relies on 
Fancher v. Central Illinois Public Service Co.
, 279 Ill. App. 3d 530, 664 N.E.2d 692 (1996), for the proposition that ownership of land is sufficient to impose a duty of care on Klein Creek.  In 
Fancher
, the decedent was killed when he entered a fly ash silo for purposes of cleaning it.  
Fancher
 279 Ill. App. 3d at 533.  This court noted, however, that the owner of the silo knew or should have known that the employees of the contractor hired to clean it would enter the silo because custom and practice required them to do so.  
Fancher
, 279 Ill. App. 3d at 536-37.  In addition, the owner of the premises instructed the contractor not to use a method that the contractor contended was safer.  
Fancher
, 279 Ill. App. 3d at 538-39.  Here, Klein Creek was not involved in the means, methods or techniques of the excavating process.  The record indicates that the only connection Klein Creek had to the excavation was to order the trenches to be excavated.  

In the instant case, Bieruta left his machine and went into the trench to remove an obstruction.  Klein Creek did not and could not have anticipated that Bieruta, the backhoe operator, would leave his machine and enter the trench, especially after he was instructed to stay on his machine minutes before the accident.  This practice was contrary to the union rules, custom of the trade and the specific instructions of Dostal.  Moreover, Klein Creek never gave any instructions to DuPage or Bieruta other than orders as to the work it desired.  

Bieruta also cites to 
Sobczak v. Flaska
, 302 Ill. App. 3d 916, 706 N.E.2d 990 (1998).  This decision, however, was based on the fact that the possessor of the land exercised sufficient control over the work performed on the premises, which is further explored in the plaintiff's second claim.  
Sobczak
, 302 Ill. App 3d at 920.

II

Bieruta also claims that Klein Creek retained sufficient control over safety and the work site as a general contractor and owner to give rise to a duty to provide a safe working place.  Bieruta contends that Klein Creek should have required a trench box or shoring to reinforce the trench thereby preventing its collapse and his injury.  Plaintiff relies on section 414 of the Restatement and his claim against Klein Creek is based on common-law negligence.  In any action for negligence, the plaintiff must present sufficient evidence to establish the defendant owed a duty to the plaintiff.
  
Wojdyla v. City of Park Ridge
,
 148 Ill. 2d 417, 421, 592 N.E.2d 1098 (1992);
 
Rogers v. West Construction Co.
,
 252 Ill. App. 3d 103, 105, 623 N.E.2d 799 (1993).  Whether a duty exists is a question of law to be decided by the court, and if no duty exists there can be no recovery.
  
Schoenbeck v. Du Page Water Comm'n
,
 240 Ill. App. 3d 1045, 1047-48,
 607 N.E.2d 693 (1993).  We review the trial court's grant of summary judgment in favor of Klein Creek under a
 
de
 
novo
 standard. 
 
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113, 649 N.E.2d 1323 (1995).  

As a general rule, one who employs an independent contractor is not liable for the acts or omissions of the latter.
  
Gomien v. Wear-Ever Aluminum, Inc.
,
 50 Ill. 2d 19, 21, 276 N.E.2d 336 (1971).  Section 414 of the Restatement (Second) of Torts, a recognized expression of Illinois law, provides an exception to the general rule.  See
 
Larson v. Commonwealth Edison Co.
,
 33 Ill. 2d 316, 211 N.E.2d 247 (1965).  Section 414 of the Restatement states:

   "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to
 exercise his control
 with reasonable care." (Emphasis added.)   Restatement (Second) of Torts §414 (1965).

The "retained control" concept is explained in comment 
c
 to section 414, which states:  

   "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done.  It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.  Such a general right is usually reserved to employers, but it
 does not mean that the contractor is controlled as to his methods of work, or as to operative detail.  There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.
"  (Emphasis added.)   Restatement (Second) of Torts §414, Comment c, at 388 (1965).

Bieruta cites to
 
Sobczak v. Flaska
,
 302 Ill. App. 3d 916, 706 N.E.2d 990 (1998), contending that the pleadings and testimony, along with affidavits presented to the trial court, raised a fact question on whether Klein Creek exerted sufficient control over DuPage to be held liable.  We disagree.

In
 
Sobczak
,
 there was evidence the injured employee was working
 under the direct supervision of the property owner (Flaska), who listed himself as general contractor on the permit for renovations at his home.  The evidence showed Flaska "told Sobczak what to do and how to do it or passed such information through others."
  
Sobczak
,
 302 Ill. App. 3d at 923.

In this case, although Klein Creek was listed as the general contractor, there is no indication that it exerted any control over the mass excavation of the townhouse lots.  There is no contract between Klein Creek and DuPage.  There is no evidence that Klein Creek did anything more than tell DuPage which lots to excavate and for what purpose.  There is no evidence to suggest DuPage was not entirely free to perform the work in its own way.   The evidence showed Klein Creek never directed the "operative details" of the work performed by DuPage or Bieruta.  DuPage, not Klein Creek, supplied all the equipment that Bieruta used and DuPage, through its foremen Dostal and Wojciechowski, directed Bieruta to excavate the hole with specific instructions not to leave his machine.  

Furthermore, even assuming that this method of excavating without a trench box or shoring was in fact dangerous and led to Bieruta's injury, there is nothing to suggest that the general contractor "knew or had notice of the hazardous method employed" at the time.  
Rangel v. Brookhaven Constructors, Inc.
, 307 Ill. App. 3d 835, 839, 719 N.E.2d 174 (1999).  Moreover, the owners, foremen and employees of DuPage testified at deposition that DuPage was responsible for the methods, means and techniques used in performing their work.  The plaintiff testified as follows:

   "MR. LYONS [Defense Attorney]:  Okay, in terms of the work you did, did you take you direct orders from Wojciechowski?

   MR. BIERUTA:  Yes.

   MR. LYONS:  Okay.  And in terms of technique and method that you used to excavate?

   MR. BIERUTA:  Sometimes.

   MR. LYONS:  Okay.  Is that something that you and DuPage Topsoil determine how it was you were going to use that backhoe and how you were going to excavate?

   MR. BIERUTA:  Sometimes Mike or Joe would tell you how they want it dug.

   MR. LYONS:  Is this Mike Wojciechowski?

   MR. BIERUTA:  Yes, sir.

   MR. LYONS:  Or Joe Kleim?

   MR. BIERUTA:  Kleim.

   MR. LYONS:  Kleim, I am sorry.  But in terms of how the excavation was done, or the work that was done, that was something either you did - - determined yourself, or received orders from DuPage Topsoil, correct?

   MR. BIERUTA:  Correct.

   MR. LYONS:  The general contractor didn't tell you how to do your work, did they?

   MR. BIERUTA:  No."  

Bieruta cites to several other case for the proposition that Klein Creek, as a general contractor and owner, owed Bieruta a duty of care by virtue of its retained control.  See 
Pasko v. Commonwealth Edison Co.
, 14 Ill. App. 3d 481, 302 N.E.2d 642 (1973); 
Weber v. Northern Illinois Gas Co.
, 10 Ill. App. 3d 625, 295 N.E.2d 41 (1973); 
Miller v. DeWitt
, 37 Ill. 2d 273, 226 N.E.2d 630 (1967); 
Claudy v. City of Sycamore
, 170 Ill. App. 3d 990, 524 N.E.2d 994 (1988); 
Bokodi v. Foster Wheeler Robbins, Inc.
, 312 Ill. App. 3d 1051, 728 N.E.2d 726 (2000); 
Brooks v. Midwest Grain Products of Illinois, Inc.
, 311 Ill. App. 3d 871, 726 N.E.2d 153 (2000).  We find that those cases are factually inapposite and the facts in the 
Rangel
 case are far more similar to the instant case.  See generally 
Rangel
, 307 Ill. App. 3d 835, 719 N.E.2d 174.  

The 
Pasko
 court found that the defendant had an inspector present twice daily at the jobsite pursuant to a contract between the subcontractor and the defendant.  Also, this inspector observed several incidents of "cave-ins" and took no steps to address the situation.  
Pasko
, 14 Ill. App. 3d at 483-85.  In 
Weber
, there was also an inspector present on behalf of the defendant who made certain the job was done to the defendant's specifications.  The defendant's inspector admitted that the equipment used by the plaintiff was inadequate, but he did not take any steps to stop the work.  
Weber
, 10 Ill. App. 3d at 634.  In 
Claudy
, the trial judge noted that the matter was not "one hundred percent free from doubt," and there was testimony that the defendant exercised control over the plaintiff's employer.  
Claudy
, 170 Ill. App. 3d at 998.  In 
Miller
, the defendant in that case exercised supervisory control of nearly all aspects of the work pursuant to a contract with the owner of the premises.  This included the right to insist upon the safe and adequate methods that the contractors would use in performing their work.  
Miller
, 37 Ill. 2d at 280-85.  In 
Brooks
, the defendant promulgated a set of safety rules that the contractors were to follow.  The defendant also had a project engineer to oversee the site and he observed the plaintiff working in an unsafe manner prior to the incident.  
Brooks
, 311 Ill. App. 3d at 873.  Similarly in 
Bokodi
, the defendant general contractor had entered into a contract with the owner of the premises containing 29 different safety measures that the contractors were to follow.  
Bokodi
, 312 Ill. App. 3d at 1063.  

We find there can be no liability imposed on Klein Creek because, as stated in
 
Fris v. Personal Produc
ts Co.
,
 255 Ill. App. 3d 916, 924, 627 N.E.2d 1265 (1994), "[the employer] controlled the ends; [the independent contractor] was responsible for the means by which those ends were to be achieved."   That is, even where the employer or general contractor retains the right to inspect the work done, orders changes to the specifications and plans, and ensures that safety precautions are observed and the work is done in a safe manner, no liability will be imposed on the employer or general contractor unless the evidence shows the employer or general contractor retained control over the "incidental aspects" of the independent contractor's work.
  
Fris
,
 255 Ill. App. 3d at 924.  See also 
Rogers v. West Construction Co.
,
 252 Ill. App. 3d 103, 623 N.E.2d 799 (1993)(no liability found under section 414 of the Restatement (Second) of Torts when the responsibility of the general contractor is primarily focused on checking daily progress, not supervising the manner in which work was done).

For the forgoing reasons, we affirm the decision of the circuit court.

Affirmed.

McNULTY and TULLY, JJ., concur.