No. 2--04--0996

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

RICHARD DOWNS,

Plaintiff-Appellant,

v.

STEEL AND CRAFT BUILDERS, INC.,

Defendant and Third-Party Plaintiff-

Appellee

(Tri-County Properties, Defendant and Third-Party Plaintiff; P&M Water and Sewer, Inc., Third-Party Defendant).

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Du Page County.

No. 01--L--386

Honorable

Terence M. Sheen,

Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:  

Plaintiff, Richard Downs, an employee of an independent contractor, suffered serious injuries when a trench collapsed at a construction site.  Plaintiff sued defendant, Steel and Craft Builders, Inc., the general contractor of the site, alleging common-law negligence.  The circuit court granted summary judgment in defendant's favor.  Plaintiff appeals the judgment, arguing that defendant had a duty to prevent his injuries in light of its retention of control over certain aspects of the construction site, its contract with plaintiff's employer, its nondelegable duty to comply with applicable safety regulations, and as the possessor of the land where the injury occurred.  Because defendant owed no duty to plaintiff under these theories, we affirm.

I.  BACKGROUND

Plaintiff's injuries occurred on April 12, 1999, at a West Chicago building construction site owned by Tri-County Properties, a partnership between Ravin "Woody" Ray and his son.  Defendant, a corporation owned entirely by Ravin Ray, acted as the general contractor for the job.  

Prior to commencing construction, defendant hired several independent contractors, including plaintiff's employer, P&M Water and Sewer, Inc. (P&M), to work at various stages of the job.  P&M contracted to work on a sewer system.  Pursuant to the contract, defendant could order work to start or to stop, could order changes to the plans, and could approve the workmen, subcontractors, or material suppliers hired by P&M.  Otherwise, defendant placed the burden and the responsibility of completing the work on P&M.  

Pursuant to the contract, P&M was required to provide labor, equipment, and material. Additionally, P&M agreed to defend, to indemnify, and to "save harmless" defendant against any injuries arising out of P&M's performance of the contract.  Finally, the contract identified the standard of conduct and working conditions by which P&M was to abide:  

"All sub-contractors and material suppliers and their Sub-contractors and/or agents are required and herewith notified that they will comply with [the] Williams-Steiger Occupational Safety and Health Act of 1970, which became effective April 28, 1971.  The Sub-contractor assumes responsibility to the Contractor for compliance with applicable regulations issued under the Construction Safety Act of 1960 and the Occupational Safety and Health Act of 1970 as to acts of commission or omission by the Sub-contractor, its agents, employees, and Sub-contractors and hold [
sic
] Steel & Craft Builders Corporation, and the Owner harmless."

These terms were standard in all of defendant's subcontracts.

Exercising its authority under the contract, defendant scheduled P&M to install a pipe from a water main to the building being constructed.  Plaintiff and his coworkers arrived in the morning of their first day at the site.  Plaintiff was employed as a "bottom man," whose task involved climbing down into trenches in order to set, to level, and to connect pipes.  Before plaintiff could perform his task, his coworkers used a backhoe to dig into an existing trench so the pipes could be laid properly.  As they dug, the workers noticed that the ground was extremely moist.  Eventually, water began spilling into the trench, and the backhoe operator could not prevent dirt from falling in.  

Although plaintiff suggested that a trench box and a bigger machine be used to reduce the likelihood of a cave-in, his boss decided instead to halve the length of the pipe that was to be installed.  While working to connect the second section of the pipe, plaintiff noticed that the trench wall was collapsing.  Despite his attempt to move out of the way, the collapsed wall buried him up to his chest, causing serious injuries to his left knee, hip, and leg.  

In the morning of the day of the accident, Ravin Ray was at the construction site, but he did not observe the accident or the work being done by P&M; nor did he instruct P&M on the work.  He did not direct, supervise, or participate in the work, the means, or the methods of P&M.  He frequently visited the site to look only at the work's progress, and he observed no safety violations.  He relied on the subcontractors for safety, providing them with no classes, inspectors, or equipment.

After the accident, plaintiff sued defendant and Tri-County Properties for negligence.  Both defendants filed third-party complaints against P&M.  On August 31, 2004, the circuit court entered summary judgment against plaintiff, finding a lack of negligence because neither defendant nor Tri-County Properties retained control over the work that P&M had performed.  Plaintiff filed a timely notice of appeal from only that portion of the order that granted summary judgment to defendant.  

II.  ANALYSIS

In a negligence action, a plaintiff must present sufficient evidence to establish that the defendant owed a duty to the plaintiff.  
Wojdyla v. City of Park Ridge
, 148 Ill. 2d 417, 421 (1992); 
Rogers v. West Construction Co.
, 252 Ill. App. 3d 103, 105 (1993).  The existence of a duty is a question of law to be decided by the court; if no duty exists there is no recovery.  
Schoenbeck v. Du Page Water Comm'n
, 240 Ill. App. 3d 1045, 1047-48 (1993).  The grant of summary judgment will be affirmed if the pleadings, depositions, affidavits, and admissions show that there are no genuine issues of material fact and if judgment is proper as a matter of law.  
General Casualty Insurance Co. v. Lacey
, 199 Ill. 2d 281, 284 (2002).  
Our review is 
de novo
.  
Lacey
, 199 Ill. 2d at 284.  

Plaintiff presents three bases for the existence of a duty of care: (1) defendant's contractual right to control and actual retention of control under section 414 of the Restatement (Second) of Torts; (2) the applicable safety regulations; and (3) defendant's status as possessor of the land under section 343 of the Restatement (Second) of Torts.  We address each in turn.  

A.  Section 414 of the Restatement (Second) of Torts

Plaintiff argues that defendant owed him a duty of care pursuant to section 414 of the Restatement (Second) of Torts, because defendant retained control of certain aspects of the work performed by P&M.  Restatement (Second) of Torts §414 (1965).  Generally, one who employs an independent contractor is not liable for the latter's acts or omissions.  
Rangel v. Brookhaven Constructors, Inc.
, 307 Ill. App. 3d 835, 838 (1999).  In Illinois, a recognized exception to this rule is found in section 414 of the Restatement (Second) of Torts (
Larson v. Commonwealth Edison Co.
, 33 Ill. 2d 316, 325 (1965)), which states:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."  Restatement (Second) of Torts §414, at 387 (1965).  

Comment 
c
 to section 414 explains the "retained control" concept:  

"c.  In order for the [exception] to apply, the employer must have retained at least some degree of control over the manner in which the work is done.  It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress *** or to prescribe alterations and deviations.  Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail.  There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."  Restatement (Second) of Torts §414, Comment 
c
, at 388 (1965).  

Whether a contractor retained such control over a subcontractor's work so as to give rise to liability is an issue reserved for a trier of fact, unless the evidence presented is insufficient to create a factual question.  
Bokodi v. Foster Wheeler Robbins, Inc.
, 312 Ill. App. 3d 1051, 1059 (2000).  

The best indicator of whether a contractor has retained control over the subcontractor's work is the parties' contract, if one exists.  The interpretation of a contract is a question of law and therefore may be decided on a motion for summary judgment.  
Fitzwilliam v. 1220 Iroquois Venture
, 233 Ill. App. 3d 221, 237 (1992).  When interpreting a contract, we must consider the entire document (
Spectramed, Inc. v. Gould, Inc.
, 304 Ill. App. 3d 762, 770 (1998)) to give effect to the parties' intent (
Omnitrus Merging Corp. v. Illinois Tool Works, Inc.
, 256 Ill. App. 3d 31, 34 (1993)), as determined by the plain and ordinary meaning of the language of the contract (
Owens v. McDermott, Will & Emery
, 316 Ill. App. 3d 340, 344 (2000)).  The question in this case is whether the contract between defendant and P&M evidences an intent by defendant to retain any control over safety at the construction site, which would give rise to a duty of care owed by defendant to plaintiff.

Generally, in a construction negligence case involving a contract between a defendant general contractor and an independent contractor that employed the plaintiff, summary judgment is improperly granted to a general contractor that had agreed to retain control over safety at a construction site (see, 
e.g.
, 
Moorehead v. Mustang Construction Co.
, 354 Ill. App. 3d 456, 461 (2004) (general contractor agreed to be " 'fully and solely responsible for the jobsite safety' "); 
Moss v. Rowe Construction Co.
, 344 Ill. App. 3d 772, 777 (2003) (same)), or where a general contractor goes to great lengths to control safety at the construction site even though an independent contractor contracts to control its own work (see, 
e.g.
,
 
Bokodi
, 312 Ill. App. 3d at 1063-64; 
Brooks v. Midwest Grain Products of Illinois, Inc.
, 311 Ill. App. 3d 871, 874-75 (2000)).  Alternatively, summary judgment in favor of the general contractor is appropriate where an independent contractor is contractually responsible for jobsite safety and the defendant general contractor takes no active role in ensuring safety (
Steuri v. Prudential Insurance Co. of America
, 282 Ill. App. 3d 753, 758, 762-64 (1996); 
cf.
 
Fris v. Personal Products Co.
, 255 Ill. App. 3d 916, 924-25 (1994) (defendant retained the authority to stop unsafe work but did not actively inspect for safety or employ a safety plan)), or where the general contractor reserves the general right of supervision over the independent contractor but does not retain control over the incidental aspects of the independent contractor's work (
Rangel
, 307 Ill. App. 3d at 839).  

Here, defendant neither controlled nor was responsible for the safety measures employed at the construction site.  Pursuant to the contract, P&M agreed to comply with the safety requirements of the Williams-Steiger Occupational Safety and Health Act of 1970 (the OSHA) (29 U.S.C. §651 
et seq.
 (2000)) and to assume responsibility to defendant for compliance with the applicable regulations issued under the OSHA and the Construction Safety Act of 1969 (the CSA) (40 U.S.C. §333 
et seq.
 (2000) (now "Contract Work Hours and Safety Standards Act" (40 U.S.C. §§3704 through 3705 (Supp. I 2005)))).  During construction, defendant's representative, Ravin Ray, visited the site to look only at the construction's progress, and he never observed any safety violations.  Defendant relied on the subcontractors for safety, providing them with no classes, inspectors, or equipment.  Furthermore, the rights retained by defendant to schedule and to stop work, to order changes, and to approve of hiring are general rights of supervision and not a retention of control over the incidental aspects of the work done by P&M.  

Although we conclude that 
the contract did not grant defendant
 sufficient control over 
P
&M's work to create a duty to 
plaintiff
, our analysis of section 414 does not end there.  It is possible that a duty to a subcontractor's employee may be created by the contractor's actions undertaken in contravention of, or in the absence of, an agreement.  

For instance, the First District recently decided a case in which the contractor and subcontractor had not agreed on the scope of the contractor's control over the subcontractor's work.  Applying section 414 in 
Bieruta v. Klein Creek Corp.
, 331 Ill. App. 3d 269, 272 (2002), the appellate court held a defendant general contractor not liable for injuries sustained by an independent contractor's employee, because the defendant did not retain control over the "incidental aspects" of the independent contractor's work.  In that case, the plaintiff was injured at work by falling when a trench edge gave way because reinforcement was not provided by the plaintiff's employer, which controlled the means, methods, and techniques of the excavation and supplied all of the equipment, direction, and specific instructions.  
Bieruta
, 331 Ill. App. 3d at 271-72, 276.  Under the circumstances, there was no evidence that the defendant exerted control over the excavation of the site or directed its "operative details"; that the defendant did anything more than tell the plaintiff's employer where and why to excavate; or that the plaintiff's employer was not entirely free to perform the work in its own way.  
Bieruta
, 331 Ill. App. 3d at 272, 276.  Furthermore, even if the lack of reinforcement was dangerous and led to the plaintiff's injuries, there was no evidence that the defendant knew or had notice of the hazardous method used.  
Bieruta
, 331 Ill. App. 3d at 276.  The court held that the defendant could not be liable for the plaintiff's injuries, because " '[the employer] controlled the ends; [the independent contractor] was responsible for the means by which those ends were to be achieved.' "  
Bieruta
, 331 Ill. App. 3d at 278, quoting 
Fris
, 255 Ill. App. 3d at 924.  

Although a contract between the general contractor and independent contractor was conspicuously absent from 
Bieruta
, the case nevertheless is illustrative.  In this case, defendant, by its conduct, could have created a duty to 
plaintiff
 by exercising control over P&M's work.  However, the facts indicate that, like the general contractor in 
Bieruta
, 
defendant
 did not control the subcontractor's work.  There is no evidence that defendant exerted control over the construction site, other than by telling the independent contractors where to work and when.  Nothing indicates that defendant directed the "operative details" of the excavation or that P&M was not free to perform the work in its own way.  Furthermore, even if we assume that the conditions and methods used were dangerous and led to plaintiff's injuries, there is no evidence that defendant knew or had notice that P&M employed a hazardous method in dangerous conditions at the time of the accident.  Consequently, defendant controlled not the "incidental aspects" of the independent contractor's work, but rather only the desired ends.  Therefore, defendant cannot be liable for plaintiff's injuries based only on the circumstances surrounding the accident.  

In summary, defendant did not direct, supervise, or participate in any of the work, means, or methods of P&M.  Because defendant 
contractually
 and 
actually
 removed itself from the incidental aspects of the construction and safety work done by P&M, summary judgment for defendant is appropriate on this issue.  However, plaintiff argues that, because the contract required compliance with the OSHA and the CSA, defendant owed a nondelegable duty of care to plaintiff.  We turn now to that argument.  

B.  The Applicable Federal Regulations

Plaintiff acknowledges that the contract obligates only P&M, and not defendant, to comply with the OSHA and the CSA.  Nevertheless, plaintiff argues that defendant owed him a duty under the contract by virtue of adopting those regulations, because a subcontractor cannot comply with them unless the general contractor shares certain responsibilities and performs certain obligations.  Defendant counters, arguing that P&M contractually assumed responsibility for compliance with those regulations.  Therefore, the question, which is one of first impression, is whether a general contractor may delegate its responsibilities under the OSHA and the CSA to an independent contractor for the purposes of avoiding liability in a private cause of action for injuries sustained by an employee of the independent contractor.  The answer requires separate examinations of both acts.

1.  
The OSHA

The OSHA creates a government program to enforce compliance with federal occupational safety and health standards (
Johnson v. Koppers Co.
, 524 F. Supp. 1182, 1189 (N.D. Ohio 1981); 
Kelley v. Howard S. Wright Construction Co.
, 90 Wash. 2d 323, 334, 582 P.2d 500, 507 (1978)) by employers in the private sector.  29 U.S.C. §§651, 654 (2000); 
George v. Myers
, 169 Or. App. 472, 481, 10 P.3d 265, 271 (2000).  Subpart C and the subsequent subparts of Part 1926 of Title 29 of the Code of Federal Regulations set forth the specific construction standards.  
George
, 169 Or. App. at 481, 10 P.3d at 271.  Notably, subpart P of Part 1926 specifically applies to excavating trenches, and it regulates, among other things, the use of trench boxes to protect employees from hazardous conditions, such as water accumulation, and the inspection of excavation sites for potential safety hazards.  See 29 C.F.R. §§1926.650 through 1926.651 (2004).  It is difficult, if not impossible, for an employer to avoid government sanctions for noncompliance with these standards.  See 
Central of Georgia R.R. Co. v. Occupational Safety & Health Review Comm'n
, 576 F.2d 620, 625 (5th Cir. 1978) (under federal enforcement of the OSHA, even if an employer privately arranges for a third party to perform the employer's statutory duties, the employer suffers the consequences of neglected duties, unless the arrangement is unenforceable).  However, the same is not necessarily true in the context of private actions, because applicability of the OSHA in that context is limited.  

The OSHA explicitly declares that it shall not be construed to supersede, to enlarge, to diminish, or to affect in any manner "the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries *** of employees arising out of, or in the course of, employment."  29 U.S.C. §653(b)(4) (2000).  Despite this broad limitation, the New Jersey court of appeals has held that, "to ensure 'prospective and continuing compliance' with the legislatively imposed non-delegable obligation to all employees on the job site, without regard to contractual or employer obligations," the OSHA regulations impose a nondelegable duty on general contractors to maintain safe jobsites.  
Kane v. Hartz Mountain Industries, Inc.
, 278 N.J. Super. 129, 142-43, 650 A.2d 808, 814 (1994), quoting 
Bortz v. Rammel
, 151 N.J. Super. 312, 321, 376 A.2d 1261, 1266 (1977) (reversing a verdict in favor of a general contractor in
 a premises liability case, where the general contractor delegated full compliance with the OSHA to an independent contractor).  We cannot come to the same conclusion in this case, because to do so would affect the rights and the liabilities of defendant under Illinois law with respect to plaintiff's injuries arising out of, or in the course of, employment.  

As demonstrated above, defendant cannot be held liable under plaintiff's theories, as governed by Illinois law.  Thus, liability in this case would result only from affecting defendant's right to contract away private liability for injuries, or from enlarging defendant's liabilities to plaintiff under section 414, by declaring that, via the OSHA, defendant retained control of the work of P&M.  Doing so would create an exception that would swallow the rule, because no matter what steps defendant would take to shield itself from liability, the OSHA inevitably would pierce defendant's armor, striking a fatal blow that otherwise would be blocked under the theories advanced by plaintiff.  Therefore, we affirm summary judgment on this issue.  

2.  
The CSA

The CSA, which predates the OSHA, provides occupational safety and health protections only to employees who work on federal, federally financed, or federally assisted construction projects.  
George
, 169 Or. App. at 481, 10 P.3d at 271.  The two acts are similar, however, as they share the same substantive regulations, including subpart P of Part 1926.  
George
, 169 Or. App. at 480, 10 P.3d at 271.  Excluded from the OSHA regulations are subparts A and B of Part 1926, which do not promulgate substantive safety rules.  
George
, 169 Or. App. at 482, 10 P.3d at 271.  

Significantly, section 1926.16 of subpart B of Part 1926, entitled "Rules of construction," governs responsibility for compliance with the CSA regulations for enforcement purposes.  
Specifically, although a general contractor and a subcontractor may make arrangements with respect to jobsite obligations, "[i]n no case shall the prime [general] contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract."  29 C.F.R. §1926.16(a) (2004).  However, to the extent that a subcontractor agrees to perform a certain task, the general contractor and that subcontractor shall be deemed to have joint responsibility with respect to that task.  29 C.F.R. §1926.16(c) (2004).  Where joint responsibility exists, both contractors are subject to government enforcement.  29 C.F.R. §1926.16(d) (2004).  

Plaintiff relies upon this section for his proposition that defendant has a nondelegable duty under the CSA.  However, the CSA, like the OSHA, creates only a government program to enforce compliance and does not deal with the assignment of liability among contractors.  Therefore, a nondelegable duty does not arise.  The same reasoning was used by the Pennsylvania Supreme Court in 
Leonard v. Pennsylvania
, 565 Pa. 101, 105-07, 771 A.2d 1238, 1240-41 (2001), to hold that, despite section 1926.16, a contractor that agreed to abide by all federal jobsite safety regulations could delegate that duty to a subcontractor.  The court found that section 1926.16 concerns only the scope of enforcement of the regulations, which, even if applicable, do not evidence control over the subcontractor's work.  
Leonard
, 565 Pa. at 107, 771 A.2d at 1241.  Absent control, liability does not attach.  
Leonard
, 565 Pa. at 107, 771 A.2d at 1241.  

A dissenting opinion argued that the contractor's voluntary agreement to abide by all federal safety regulations gave rise to that contractor's nondelegable duty.  
Leonard
, 565 Pa. at 109-10, 771 A.2d at 1243 (Nigro, J., dissenting, joined by Saylor, J.).
  The dissent reasoned that the agreement created a duty to ensure the safety of all the employees involved in the project, which was a nondelegable duty because of the strong federal and state public interest of maintaining employee safety at the workplace.  
Leonard
, 565 Pa. at 109-13, 771 A.2d at 1243-45 (Nigro, J., dissenting, joined by Saylor, J.).  

Maintaining employee safety at the workplace certainly is an important public policy, but in this case defendant did not volunteer to abide by any safety regulations; nor did defendant volunteer to ensure compliance with the applicable regulations.  Instead, as demonstrated above under plaintiff's theories, defendant shifted the responsibility for compliance to P&M by actually and contractually avoiding control over the work of P&M.  

C.  Section 343 of the Restatement (Second) of Torts

Finally, plaintiff argues that defendant owed him a duty of care pursuant to section 343 of the Restatement (Second) of Torts, because defendant possessed the land where plaintiff was injured.  Defendant argues that plaintiff waived this issue by not presenting it to the trial court.  Plaintiff acknowledges that the issue was not argued in the trial court, but responds that he did not waive the issue, averring that the legal authority to support his argument was not stated until after summary judgment was entered.  Specifically, plaintiff contends that his position is supported by 
Clifford v. Wharton Business Group, L.L.C.
, 353 Ill. App. 3d 34 (2004), the case in which an appellate court, according to plaintiff, "for the first time since the repeal of the Structural Work Act [(740 ILCS 150/0.01 
et seq.
 (West 1994))] held that the liability of a general contractor can also be based on Restatement 343."  

Even if accurate, plaintiff's statement is unpersuasive.  Prior to 1995, the Structural Work Act (the Act) coexisted with common-law negligence principles, including section 343.  
Clifford
, 353 Ill. App. 3d at 40.  The Act was repealed in 1995, but the common-law principles survived.  
Clifford
, 353 Ill. App. 3d at 40.  Accordingly, there is no reason why the repeal would have affected plaintiff's section 343 argument.  In fact, in 1990, the supreme court, without reference to the Act, held that a general contractor owed a subcontractor's employee a duty of care under section 343.  
Deibert v. Bauer Brothers Construction Co.
, 141 Ill. 2d 430, 440 (1990).  Consequently, the issue is waived.

Regardless, plaintiff's claim fails under section 343, which subjects a possessor of land to liability for physical harm caused to invitees by a condition on the land that the possessor, who failed to exercise reasonable care to protect such invitees, knew or should have known involved an unreasonable risk of harm to the invitees, who did not discover the danger or who failed to protect themselves against it.  Restatement (Second) of Torts §343, at 215-16 (1965).  However, a possessor of land is not liable for injuries caused by open and obvious dangers, unless the injured party was distracted from those dangers by focusing on some other condition or hazard.  
Clifford
, 353 Ill. App. 3d at 42-43.  In this case, the danger of a cave-in undoubtedly was open and obvious; indeed, plaintiff discussed ways to avoid it.  Furthermore, although plaintiff was focused on installing pipes, he never was distracted from the danger of a cave-in so as to warrant imposing a duty under section 343.  

III.  CONCLUSION

The decision of the circuit court of Du Page County is affirmed, because defendant owed no duty of care under the theories advanced by plaintiff.  

Affirmed.

O'MALLEY, P.J., and CALLUM, J., concur.