No. 3-03-0989

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2004 

OTIS MOOREHEAD, ) Appeal from the Circuit Court

 ) of the 12th Judicial Circuit,

Plaintiff-Appellant, ) Will County, Illinois,

 )

v. ) No. 01-L-105 

 ) 

MUSTANG CONSTRUCTION COMPANY, ) Honorable  

 ) Amy Bertani-Tomczak,

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________

MODIFIED UPON DENIAL OF REHEARING

JUSTICE LYTTON delivered the opinion of the court:

_________________________________________________________________

Plaintiff Otis Moorehead, an employee of subcontractor Mechanical & Industrial Steel Services (Mechanical), was severely injured when he fell from an extension ladder at a construction site.  He filed a complaint alleging negligence against the general contractor, Mustang Construction Company (Mustang).  The trial court granted Mustang’s motion for summary judgment on the basis that Mustang did not retain sufficient control over the subcontractor’s work.  We reverse and remand for further proceedings.  

In the spring of 1999, North Central College (North Central) hired Mustang as the general contractor for the construction of a football stadium and other facilities.  Mustang then subcontracted with Mechanical to install a drip pan system beneath the bleachers in the stadium. 

The general contract between North Central and Mustang contained numerous provisions which outlined the parties’ responsibilities.  Mustang agreed to "be fully and solely responsible for the jobsite safety" of the means, methods, and techniques of construction.  Mustang agreed to take reasonable precautions for the safety of the employees and equipment under the control or custody of the subcontractors.  Mustang also agreed to designate a safety director to help prevent accidents.  The general contract further provided that Mustang could order the work to stop if it was being performed in an unsafe manner.

According to the subcontract between Mustang and Mechanical, Mechanical agreed to provide sufficient safeguards against all injuries and to comply with all safety requirements.  The terms and provisions of the general contract were incorporated in their entirety, including the safety specifications.  Mechanical expressly assumed and promised to perform all of the work agreed to in the general contract, as those obligations pertained to the work undertaken in the subcontract.

Mustang appointed Dave Bender as its on-site project manager.  Bender supervised the project on a daily basis and inspected the work to ensure that it was in compliance with the drafted plans and that the work was being performed in a safe manner.  In addition, Bender held regular construction meetings with the subcontractors for the purpose of discussing scheduling, coordination and safety issues.  On the date of the incident, Bender was on the site for 10 hours.  

Mustang’s safety director, William Warden, also conducted weekly safety inspections to ensure overall compliance with Occupational Safety and Health Administration (OSHA) regulations and to address any safety concerns.  Between June and August of 1999, Warden prepared five memos reporting various safety concerns and violation at the stadium.  In a Mustang report issued prior to Moorehead’s incident, Warden indicated that "all care must be taken to protect workmen from falling.  This mandates properly placed and constructed protective railings and proper ladders set up in accordance with the OSHA standards."  

Moorehead worked as an ironworker for Mechanical, installing the drip pan system in the stadium.  He and his partner welded pieces of angle iron under the seats while other Mechanical employees connected the drip pan to the angle iron.  The drip pan system was installed overhead at different elevations.  To reach the area under the bleachers, Moorehead used the top half of an extension ladder.  The ladder did not have proper safety feet and was not blocked at the base.  Moorehead was severely injured when the ladder slipped out from under him, causing him to fall approximately 15 feet to a cement floor.    

Both Bender and Warden had observed Moorehead attaching the angle iron while using the extension ladder.  Bender noted that the ladder was not tied off or blocked at the base to secure its position.  Warden noticed that Moorehead’s ladder was dangerous because it did not have proper feet attached.  Neither Bender nor Warden instructed Mechanical to stop work.  They did not witness Moorehead’s fall.     

Moorehead brought a construction negligence suit against Mustang.  The basis of Moorehead’s claim was that Mustang failed to exercise with ordinary care its retained control over safety.  Mustang moved for summary judgment, claiming that it did not owe a duty to Moorehead.  The trial court granted the motion.

ANALYSIS

Moorehead maintains that the trial court erred in granting summary judgment, 
arguing that there was a genuine issue of material fact regarding Mustang’s duty of care pursuant to section 414 of the Restatement (Second) of Torts.  Restatement (Second) of Torts §414 (1965). 

Summary judgment is only appropriate when the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(e) (West 2000).  While a useful aid in the expeditious disposition of lawsuits, summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt.  
Purtill v. Hess
, 111 Ill. 2d 229, 489 N.E.2d 867 (1986).  The purpose of summary judgment is not to try a question of a fact, but to determine whether one exists.  
Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d 511, 622 N.E.2d 788 (1993).  

Generally, one who employs an independent contractor is not liable for the acts or omissions of the latter.  
Rangel v. Brookhaven Constructors, Inc.
, 307 Ill. App. 3d 835, 719 N.E.2d 174 (1999).  Section 414 of the Restatement of Torts provides an exception to this rule.  Under the exception, one who employs an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care.  Restatement (Second) of Torts § 414 (1965); 
Brooks v. Midwest Grain Products
, 311 Ill. App. 3d 871, 726 N.E.2d 153 (2000).  

Whether a duty exists under section 414 is a question of law and turns on whether the defendant controls the work in such a manner that he should be held liable.  
Kotecki v. Walsh Construction Co.
, 333 Ill. App. 3d 583, 776 N.E.2d 774 (2002).  For the rule to apply, the employer must have retained at least some degree of control over the manner in which the work is done.  It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress, or to make recommendations which may or may not be followed.  There must be such a retention of a right of supervision that the subcontractor is not entirely free to do the work in his own way.  Restatement (Second) of Torts §414, Comment 
c
, at 388 (1965).  When a general contractor entrusts part of the work to a subcontractor, he is subject to liability if he (1) fails to prevent the subcontractors from doing the details of the work in a way unreasonable dangerous to others, (2) knows or should know the work is being so done, and (3) has the opportunity to prevent it by exercising his retained power of control.  Restatement (Second) of Torts §414, Comment 
b
, at 387-88 (1965).              

I.

Mustang cites our earlier decision in 
Fris v. Personal Products Co.
, 255 Ill. App. 3d 916, 627 N.E.2d 1265 (1994) for its claim that it has no liability absent some evidence that it controlled the means and methods of Mechanical’s work.  

In 
Fris
, the plaintiff was injured when he attempted to move a pallet.  He filed suit against the owner who had hired an independent contractor to perform the work.  At trial, there was no evidence that plaintiff’s attempt to move the pallet was performed in an unsafe manner.  The jury found that the owner owed a duty to Fris and awarded damages.  On review, the appellate court held that there was no evidence of an unsafe condition surrounding the pallet.  The court also held that there was no evidence that defendant controlled the routine and incidental aspects of the subcontractor’s activities which led to plaintiff’s injury.  Therefore, it directed the trial court to enter a judgment notwithstanding the verdict.  
Fris
, 255 Ill. App. 3d at 924-25, 627 N.E.2d at 1270.  
This case is both factually and procedurally distinguishable from 
Fris
.  

A.

The facts in 
Fris
 indicate that the plaintiff 
was performing a routine and incidental activity over which the defendant had no control.  In this case, the pleadings and deposition testimony demonstrate that Mustang was responsible for initiating, maintaining, and supervising all safety procedures.  Mustang initiated a specific safety program and designated an individual whose sole function was investigation for safety hazards.  Mustang had the authority to stop any work that was being conducted in an unsafe manner.  Mustang’s safety manager inspected the site on a weekly basis to ensure compliance with safety standards.  Moorehead had been using the extension ladder in an unsafe manner for several weeks.  The safety manager observed Moorehead installing the drip pan system on the extension ladder and noticed that the ladder did not have proper safety feet.  

Under the above facts, Moorehead has sufficiently alleged the existence of a duty under section 414 of the Restatement.  Compare 
Shaughnessy v. Skender Construction Co.
, 342 Ill. App. 3d 730, 794 N.E.2d 937 (2003) (summary judgment in favor of general contractor was appropriate where contractor neither designated a safety director to inspect safety of jobsite, nor knew or had notice of the hazardous condition that led to worker’s injury); 
Martens v. MCL Construction Corp.
, 347 Ill. App. 3d 303, 807 N.E.2d 480 (2004) (summary judgment affirmed where general contractor could not stop the work or supervise subcontractor and injured employee was working within OSHA standards).   

B.

Furthermore, the procedural status of this case differs from 
Fris
.  In 
Fris
, the case had been tried before a jury, but this court reversed because 
plaintiff failed to submit any evidence at trial of the type of control necessary to assign a duty.  Here, we have found that Moorehead has sufficiently alleged the existence of a duty and material issues of fact remain so as to avoid summary judgment.  Whether Moorehead can sustain his negligence claim at trial remains to be proven.  See 
Brooks
, 311 Ill. App. 3d 871, 875, 726 N.E.2d 153.  The trial court erred in awarding summary judgment to defendant.

II.

In the alternative, Mustang argues that it did not owe Moorehead a duty because Mechanical assumed Mustang’s obligation to control safety under the terms of the subcontract.  

The general contract states that Mustang "shall be fully and solely responsible for the jobsite safety."  The contract does not allow Mustang to replace its obligation to control the safety of the project.  See 
Weber v. Northern Illinois Gas Company
, 10 Ill. App. 3d 625, 295 N.E.2d 41 (1973).  The subcontract between Mustang and Mechanical requires that Mechanical also insure the safety of its employees.  The subcontract can not substitute Mustang’s primary duty to North Central to provide a safe working environment at the project and does not affect Mustang’s duty to Moorehead.  In other words, our analysis of this issue does not concern any allocation of responsibility for safety between Mustang and Mechanical, but rather Mustang’s control of the project under its contract with North Central. 

CONCLUSION

The judgment of the circuit court of Will County granting summary judgment in favor of Mustang is reversed, and the case is remanded for further proceedings.

Reversed and remanded.

SLATER, PJ., and MCDADE, J., concurring.