YEVGENIY MOISEYEV, Plaintiff-Appellant, v. ROT'S BUILDING AND DEVELOPMENT, INC., et al., Defendants-Appellees.

Third District   No. 3—05—0761

Opinion filed December 21, 2006.

Jeffrey C. Kasten (argued) and Robert N. Wadington, both of Robert N. Wadington & Associates, of Chicago, for appellant.

Janet M. Farmans, of Querrey & Harrow, Ltd., of Joliet, and David E. Neumeister (argued), of Querrey & Harrow, Ltd., and Lawrence Lulich (argued), of Wolf & Wolfe, Ltd., both of Chicago, for appellees.

JUSTICE CARTER delivered the opinion of the court:

Plaintiff Yevgeniy Moiseyev sued defendants Rot's Building and Development and Keith A. Rot, for construction negligence based on an injury arising out of a fall from a scaffold on a house that Moiseyev was working on. Plaintiff's employer, OSI Construction, was the subcontractor and Rot was the general contractor. The trial court granted defendants' motion for summary judgment as plaintiff could not show that defendants had the requisite control over the subcontractor's work that would create the necessary duty of care to render defendants liable for plaintiff's injuries. Plaintiff then filed a motion to reconsider the summary judgment and a motion for leave to amend his complaint to include a new count of premises liability. The trial court denied both motions and plaintiff now appeals.

## FACTS

On November 30, 1995, Yevgeniy Moiseyev was employed as a plasterer by OSI Construction, Inc. (hereineafter OSI), when he fell from a scaffold on a jobsite and was injured. OSI had been hired as a subcontractor to apply the exterior finish to the outside of a house be-

ing constructed by Rot Building and Development, Inc. (hereinafter RBD), the general contractor. Plaintiff sued RBD and sued individually its owner/president, Keith A. Rot, on whose Naperville residence plaintiff was working at the time of his fall.

The original complaint, filed in 1997, was dismissed in August 2001 and refiled on May 22, 2002. The 2002 complaint mirrored the original. The 2002 complaint alleged two counts of common law negligence under section 414 of the Restatement (Second) of Torts (Restatement (Second) of Torts §414 (1965)), one against RBD, and one against Rot individually.

Specifically, the complaint alleged that: RBD/Rot, as general contractor on Rot's personal residence, employed various subcontractors, including OSI, for the construction of the residence; RBD/Rot supervised, directed, and controlled the work being performed by OSI and had the authority to do so; RBD/Rot also had authority to supervise, direct, and control the physical safety of OSI's employees while working on the site. That plaintiff's injuries were caused by the carelessness and negligence of RBD/Rot in that defendants: (1) failed to provide a safe scaffold for plaintiff to work from; (2) failed to require OSI to provide a safe scaffold to work from; (3) failed to prevent plaintiff from working on the scaffold when they knew it to be unsafe; (4) failed to prevent OSI from requiring that plaintiff work on the scaffold when they knew or should have known it was not safe; (5) failed to inspect the structural safety of the scaffold that plaintiff was required to work from; (6) failed to require OSI to inspect the structural safety of the scaffold that plaintiff was required to work from; (7) failed to supervise the work required of plaintiff so as to ensure his physical safety; (8) failed to require OSI to supervise the work required of plaintiff so as to ensure his physical safety; (9) failed to provide adequate safety devices so as to ensure his physical safety; and (10) failed to require OSI to provide adequate safety devices to plaintiff.

Testimony taken at depositions of Keith A. Rot, Yevgeniy Moiseyev, and Sergei Ishkov revealed the following.

Keith Rot testified that RBD acted as a general contractor on its jobsites. It coordinated the work and organized the subcontractors, but did not perform any of the physical construction work. It also did not usually require subcontractors to sign written contracts. RBD would monitor the quality of the work performed by subcontractors and ensure that the work conformed to plans and specifications for a project. Rot would monitor the performance by personally being on the jobsite. Rot testified that he had control over the jobs, so that he could step in at any time and halt the subcontractors' work if it did

not conform to plans or if it appeared to be unsafe, but that he had never actually done so. Rot would also answer questions from the subcontractors. However, Rot left safety issues up to the individual subcontractors and did not instruct subcontractors in any way about safety, nor did RBD have its own safety program or any type of written safety procedure in place. Rot testified that he would inspect the interior and exterior of the homes to ensure that they were being built in conformity with project specifications.

Rot began taking bids to work on the construction of his personal residence in Naperville in 1995. For the purposes of the project, Rot said the proposals came to RBD and he acted as his own builder. RBD was to act as the general contractor for the project, but Rot had a couple of RBD employees performing interior trim carpentry on the house. Rot testified that he was acting as a construction manager for the project. Rot selected and approved all the subcontractors to be used on the house and was responsible for securing governmental permits and inspections for the house, including permits for work to be performed by subcontractors.

OSI was hired to apply the exterior finish to the outside walls of the house. RBD never entered into a formal written contract with OSI. Rot supplied OSI with blueprints for the house and OSI based its proposal on that. OSI sent RBD a proposal for applying the exterior installation system to his home and Rot accepted. OSI was to use the "Dryvit External Insulation Finish System" on the house, which is a system that is applied in a specific method and sequence. Rot had obtained the necessary permits to allow OSI to begin work on the house.

While OSI worked, Rot would visit the site and look at the work being done. His communication with OSI was limited to the business owners who could speak passable English, generally Tony Osadchuk and Peter Ishkov. Rot never had any contact with plaintiff. OSI provided all of its own materials for its entire portion of the project. RBD did not provide any tools or equipment to OSI, nor did RBD at any time have any discussions with OSI regarding the means and methods of OSI's work. Rot never personally directed anyone from OSI on how to apply the materials on the house's external surface. Rot never supervised the means OSI workers used to do their job and never corrected them on how to do their job. Rot testified that he had seen the scaffolding that OSI had constructed in order to complete the installation, but he did not inspect the scaffolding or provide any materials for the scaffolding. Rot testified that OSI was solely responsible for the construction and safety of the scaffolding. Rot testified that he had been on the construction site November 30, 1995,

but only after the accident had happened. While Rot had been on scaffolds in the past, he was generally not experienced with them.

Plaintiff testified that he had been employed by OSI as a plasterer for approximately seven months before the accident and did not have any prior construction experience. Plaintiff's job was to apply the "foam" portion of the Dryvits system to the outside of the house. To accomplish this task, a scaffold had been built by his OSI coworkers. The OSI employees were instructed in how to build the scaffolding by their bosses at OSI. Plaintiff admitted that he had worked on scaffolding similar to the one he fell from "dozens" of times and he had also built and used similar scaffolding at other OSI projects. The metal portion of the scaffold was built by plaintiff and his coworkers, while the remaining sections, including the one from which plaintiff fell, were built by Peter Osadchuck, an OSI boss.

Plaintiff had worked on the scaffold for about a week and a half before he fell. At the time of the fall, he was working on the third section from the ground up. The lowest boards of the wood portion of the scaffold came apart, causing the remainder of the wood portions of the scaffold to come apart and collapse. He landed on his shoulder.

Plaintiff never had any contact with RBD personnel, nor did anyone from RBD ever instruct him on how to do his job. The only instruction plaintiff ever received with regard to the house was from OSI personnel. OSI provided plaintiff all his equipment and tools. Plaintiff never spoke to anyone from RBD or Keith Rot. Plaintiff testified that he was instructed by his bosses to work on the scaffold, and although he had expressed skepticism to his OSI bosses about the scaffold's safety, he did not refuse to work on it for fear of being fired. Plaintiff never told Rot or anyone from RBD that the scaffold was unsafe.

According to Sergei Ishkov, one of the owners of OSI and one of plaintiff's bosses, OSI owned the scaffold and instructed the OSI employees about the scaffold. Ishkov also said that Rot never instructed OSI about how to apply the exterior finish nor did anyone from RBD ever discuss safety with OSI.

Plaintiff filed suit against defendants on December 1, 1997, alleging common law negligence based on section 414 of the Restatement (Second) of Torts. That suit was voluntarily dismissed by plaintiff on August 1, 2001, and then refiled on May 22, 2002, again alleging common law negligence based on section 414 against defendants. A trial date was set for December 12, 2003, but that order was stricken on July 11, 2003, with a new discovery schedule set and a new trial date of February 23, 2004. On July 2, 2004, defendants substituted attorneys. On July 16, 2004, plaintiff presented his motion to schedule

remaining Rule 213(f) (134 Ill. 2d R. 213(f)) discovery and set a trial date. The motion was entered and continued generally with defendants given leave to file a motion for summary judgment. On August 16, 2004, defendants filed a motion for summary judgment contending that they owed no duty to plaintiff. At the time of the motion's filing, no new trial date had been set. After oral argument, the trial court, on March 22, 2005, granted defendants' motion for summary judgment. The trial court concluded that the record was "devoid of any evidence that OSI was not free to do the work in its own way."

Plaintiff then moved the court to reconsider the granting of summary judgment and vacate the order. Plaintiff also moved for leave to file a first amended complaint, which contained two additional counts for premises negligence against defendants. The complaints alleged that defendants owed "a duty to exercise ordinary care to operate, maintain, and/or manage the Construction Premises, including temporary structures erected thereon that defendants knew or should have known the existence of, in a condition that was unreasonably [*sic*] safe for use by persons lawfully on the Construction Premises" and that defendants breached that duty through their actions. Defendants opposed the motion, arguing that the amended complaint was untimely and would result in substantial prejudice to them if granted. Oral arguments on both motions were held September 21, 2005. The trial court entered a written order that day denying plaintiff's motion to reconsider and entered a written order October 3, 2005, denying the motion for leave to file first amended complaint as untimely. Plaintiff now appeals.

## ANALYSIS

On appeal, plaintiff raises two issues: (1) whether the trial court erred in granting defendants' motion for summary judgment when it determined plaintiff could not show defendants owed him a duty of care and (2) whether the trial court abused its discretion when it denied plaintiff's motion for leave to amend his complaint to include a count of premises liability. We will address each of these issues in turn, and we affirm the trial court's rulings on both issues.

### I

Plaintiff has appealed the trial court's granting of defendants' motion for summary judgment. "Summary judgment should be granted whenever the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show that there are no disputed material facts between the parties and that the moving party is entitled to judgment as a matter of law." *People ex rel. Department of Public Health v. Wiley*, 218 Ill. 2d 207, 220, 843 N.E.2d

259, 267 (2006). Review of the trial court's entry of summary judgment is de novo. *Wiley*, 218 Ill. 2d at 220, 843 N.E.2d at 267.

Plaintiff contends that the trial court erred when it granted defendants' motion for summary judgment. The trial court determined that plaintiff could not show defendants owed him a duty to exercise reasonable care because defendants did not retain control over any part of plaintiff's work, in that plaintiff was free to do the work in his own way. Plaintiff claims that defendants retained sufficient control over the work site as a general contractor to give rise to a duty to provide a safe working place. We disagree with plaintiff's position and affirm the grant of summary judgment.

■ Plaintiff relies on section 414 of the Restatement (Second) of Torts and his claim against defendants is based on common law negligence. In a negligence action, the plaintiff must present sufficient evidence to establish that defendant owed a duty to plaintiff. Whether a duty exists is a question of law to be decided by the court, and if no duty exists, there can be no recovery. *Cunis v. Brennan*, 56 Ill. 2d 372, 374, 308 N.E.2d 617, 618 (1974); *Bieruta v. Klein Creek Corp.*, 331 Ill. App. 3d 269, 275, 770 N.E.2d 1175, 1180 (2002). Generally, one who employs an independent contractor is not liable for the acts or omissions of the independent contractor. *Gomien v. Wear-Ever Aluminum, Inc.*, 50 Ill. 2d 19, 21, 276 N.E.2d 336, 338 (1971). However, Illinois has recognized an exception to that rule in section 414 of the Restatement (Second) of Torts. See *Larson v. Commonwealth Edison Co.*, 33 Ill. 2d 316, 211 N.E.2d 247 (1965) (*Larson* adopted section 414 as part of common law as well as broadly interpreting the old Illinois Structural Work Act (740 ILCS 150/0.01 *et seq.* (West 1994) (repealed by Pub. Act 89—2, §5, eff. February 14, 1995)) indicating the Act was used to broaden the common law duty).

Section 414 of the Restatement states:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts §414 (1965).

The comments to section 414 give further explanation:

> "*a.* If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deal with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to

subject him to liability as a master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

*b.* The rule stated in this Section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself. So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition, and fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the subcontractor to do so.

*c.* In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

Restatement (Second) of Torts §414, Comments *a, b, c* (1965).

The courts have had difficulty interpreting the term "control" and distinguishing between control which exposes a defendant to liability and control which is considered merely supervisory. In the Third District, we have adopted two approaches to the control requirement in the following cases: *Fris v. Personal Products Co.*, 255 Ill. App. 3d 916, 627 N.E.2d 1265 (1994), and *Brooks v. Midwest Grain Products of Illinois, Inc.*, 311 Ill. App. 3d 871, 726 N.E.2d 153 (2000). These two cases and others represent two lines of authority for analyzing the meaning of control. *Fris* and *Rangel v. Brookhaven Constructors, Inc.*, 307 Ill. App. 3d 835, 719 N.E.2d 174 (1999), adopt a more stringent, strict standard for "control," while *Brooks* evinces a broader standard.

In *Fris*, the plaintiff was employed as a sheet metal worker in a warehouse project when he injured his shoulder and arm while attempting to push large wooden pallets. *Fris*, 255 Ill. App. 3d at 918-19, 627 N.E.2d at 1266. A jury returned a verdict in favor of the plaintiff on the common law negligence count under section 414. *Fris*, 255 Ill. App. 3d at 922, 627 N.E.2d at 1268. The appellate court observed that the defendant had "retained the right to inspect the work done and order changes to the specifications and plans" and "retained the right to make sure safety precautions were observed, and that the work was done in a safe manner." *Fris*, 255 Ill. App. 3d at 924, 627 N.E.2d at 1270. The court further indicated that "the evidence does not show that Personal Products retained any control over the incidental aspects of Stephen's work" and that while "Personal Products controlled the ends," Fris's independent contractor employer controlled "the means by which those ends were to be achieved." *Fris*, 255 Ill. App. 3d at 924, 627 N.E.2d at 1270. Therefore, in *Fris*, the court indicated that finding the defendant liable would be too broad a reading of section 414 and "would in effect result in strict liability for all injuries to employees of independent contractors." *Fris*, 255 Ill. App. 3d at 925, 627 N.E.2d at 1270. Section 414 establishes liability for those who retain control of the right of supervision so that the contractor is not entirely free to do the work in his own way. Restatement (Second) of Torts §414, Comment *c* (1965). In finding the defendant not liable, the court indicated that the defendant did not retain control over the routine and incidental aspects of the work. *Fris*, 255 Ill. App. 3d at 924, 627 N.E.2d at 1270. However, the routine and incidental aspects test is not clearly defined. See Illinois Pattern Jury Instructions, Civil, No. 55.00 Introduction, at 223 (2006).

In *Rangel*, the plaintiff was employed as a drywall hanger by a subcontractor, Drywall, working on a job for a general contractor, Brookhaven. The plaintiff was injured when a brace on a scaffold gave way and he fell to the concrete below. *Rangel*, 307 Ill. App. 3d at 837, 719 N.E.2d at 176. The plaintiff brought suit against the general contractor alleging that it owed him a duty of care, which it breached by failing to inspect the scaffold and/or failing to warn him of the dangerous condition the scaffold presented. *Rangel*, 307 Ill. App. 3d at 837, 719 N.E.2d at 176. The trial court granted the defendant's motion for summary judgment, finding it owed the plaintiff no duty. *Rangel*, 307 Ill. App. 3d at 837, 719 N.E.2d at 176. The appellate court affirmed the ruling of the trial court, stating: "There is no evidence to suggest Drywall was not entirely free to perform the work its own way. The evidence shows Brookhaven never directed the 'operative details' of the work performed by Drywall and Rangel. Drywall, not

Brookhaven, supplied the scaffold on which Rangel worked. A Drywall supervisor, not Brookhaven, directed Rangel to utilize the braces when necessary for positioning the drywall." *Rangel*, 307 Ill. App. 3d at 839, 719 N.E.2d at 177. The appellate court found there was nothing to suggest that the general contractor had any knowledge or notice of the hazardous methods the subcontractors used to work on the job that led to the accident. *Rangel*, 307 Ill. App. 3d at 839, 719 N.E.2d at 177. The court determined that the employee was free to perform the work as he pleased and that the subcontractor, not Brookhaven, actually supplied the faulty scaffolding and directed Rangel's method of performing the work, which led to Rangel's injury. *Rangel*, 307 Ill. App. 3d at 839, 719 N.E.2d at 177. The court concluded that no liability could be imposed on the general contractor because "even where the employer or general contractor retains the right to inspect work done, orders changes to the specifications and plans, and ensures that safety precautions are observed and the work is done in a safe manner, no liability will be imposed on the employer or general contractor unless the evidence shows the employer or general contractor retained control over the 'incidental aspects' of the independent contractor's work." *Rangel*, 307 Ill. App. 3d at 839, 719 N.E.2d at 178, citing *Fris*, 255 Ill. App. 3d at 924, 627 N.E.2d at 1270. As in *Fris*, the *Rangel* court did not define incidental aspects. See Illinois Pattern Jury Instructions, Civil, No. 55.00 Intro., at 223-24 (2006). "The term 'routine and incidental aspects' has no progenitor and is not defined in" *Fris*. Illinois Pattern Jury Instructions, Civil, No. 55.00 Intro., at 224 (2006).

Likewise, in *Bieruta*, the appellate court declined to find a duty of reasonable care from a general contractor to a subcontractor where there was not enough evidence that the general contractor retained sufficient control over the subcontractor's work. *Bieruta v. Klein Creek Corp.*, 331 Ill. App. 3d 269, 770 N.E.2d 1175 (2002). In *Bieruta*, the plaintiff was employed by DuPage Topsoil, a subcontractor engaged by general contractor Klein Creek Corporation to help construct a townhouse development. *Bieruta*, 331 Ill. App. 3d at 271, 770 N.E.2d at 1177. The plaintiff, a backhoe operator, was excavating a trench when the ledge he was standing on gave way and he was injured. *Bieruta*, 331 Ill. App. 3d at 271, 770 N.E.2d at 1177. The plaintiff sued under section 414, arguing that the defendant, the general contractor, retained sufficient control so as to owe him a duty of care to provide a safe working place. *Bieruta*, 331 Ill. App. 3d at 273, 770 N.E.2d at 1177. On affirming the trial court's granting of the defendant's motion for summary judgment, the appellate court noted that there was no contract between the defendant and DuPage Topsoil and that there

was no evidence that the defendant did anything more than tell Du-Page which lots to excavate. DuPage supplied all of its own tools and equipment and through its own foremen instructed the plaintiff on his job duties. The court also found that there was no evidence that the general contractor knew or had notice of the hazardous method employed by subcontractor at the time that led to plaintiff's injury. The court concluded that the defendant never directed the operative details of the subcontractor and the subcontractor was free to do the work in its own way. *Bieruta*, 331 Ill. App. 3d at 276, 770 N.E.2d at 1181.

Other courts have declined to find a duty of reasonable care when there was not enough evidence that the general contractor retained sufficient control of the means, methods, and incidental aspects of the subcontractor's work. See *Shaughnessy v. Skender Construction Co.*, 342 Ill. App. 3d 730, 794 N.E.2d 937 (2003); *Ross v. Dae Julie, Inc.*, 341 Ill. App. 3d 1065, 793 N.E.2d 68 (2003); *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 726 N.E.2d 1171 (2000).

In support of his argument that defendant retained sufficient control, plaintiff cites to several cases, including *Weber v. Northern Illinois Gas Co.*, 10 Ill. App. 3d 625, 295 N.E.2d 41 (1973), and *Moorehead v. Mustang Construction Co.*, 354 Ill. App. 3d 456, 821 N.E.2d 358 (2004), and plaintiff particularly relies on *Brooks v. Midwest Grain Products of Illinois, Inc.*, 311 Ill. App. 3d 871, 726 N.E.2d 153 (2000). These cases are distinguishable from the present case.

In *Weber*, there was an inspector present on the work site on behalf of the defendant general contractor who made certain that the job was done to the defendant's specifications. This inspector was aware that a job was being done with inadequate equipment and that led to an accident. *Weber*, 10 Ill. App. 3d at 634, 295 N.E.2d at 47. Also, an actual contract existed between the general contractor and subcontractor, listing a specific right of the general contractor to stop work until the general contractor was satisfied that the proper means and methods had been adopted by the subcontractor to ensure safety. *Weber*, 10 Ill. App. 3d at 634, 295 N.E.2d at 47. The court found the defendant retained the right of supervision and the subcontractor was not entirely free to do the work in its own way. *Weber*, 10 Ill. App. 3d at 639, 295 N.E.2d at 50. In the present case, no contract existed between defendant and subcontractor OSI. Here, defendant had no actual knowledge that the OSI scaffold was unsafe nor did he have any reason to, since OSI was solely responsible for the scaffold and defendant Rot had little to no experience in scaffold construction.

In *Moorehead*, this court found sufficient evidence for a duty of

care to exist where the general contractor had an on-site project manager who held regular construction meetings with the subcontractors to discuss, among other things, safety. *Moorehead*, 354 Ill. App. 3d at 458, 821 N.E.2d 359. Also, the general contractor's safety director conducted weekly safety inspections to ensure overall OSHA (Occupational Safety and Health Administration) compliance. Finally, both the on-site project manager and safety director of the general contractor witnessed the plaintiff working in a way they knew to be unsafe just before the plaintiff's accident. *Moorehead*, 354 Ill. App. 3d at 458, 821 N.E.2d at 359-60. In the present case, OSI was responsible for the safety of its employees on the jobsite. Defendant Rot never had a weekly meeting with OSI where he discussed safety issues, nor did he have a "safety director" on site whose job was to conduct weekly safety inspections. Further, as stated earlier, defendant Rot never witnessed plaintiff working in any way that he knew or should have known to be unsafe.

Plaintiff relies particularly on *Brooks v. Midwest Grain Products of Illinois, Inc.*, 311 Ill. App. 3d 871, 726 N.E.2d 153 (2000). It can be argued that in *Brooks* our court took a different and more broad approach to section 414 liability and on the meaning of control. In *Brooks* the plaintiff was an iron worker employed by subcontractor General Power Construction Company working at a site for general contractor Midwest Grain Products when he fell from a suspended platform and was injured. *Brooks*, 311 Ill. App. 3d at 873, 726 N.E.2d at 154. Midwest had a contract with General Power to carry out the work. *Brooks*, 311 Ill. App. 3d at 873, 726 N.E.2d at 155. The plaintiff was not wearing a safety harness as safety rules required. *Brooks*, 311 Ill. App. 3d at 873, 726 N.E.2d at 154. This court found that the plaintiff sufficiently alleged the existence of a duty when there was evidence that the plaintiff could not proceed with his duties until he received confirmation from a representative of the general contractor that he was performing his work correctly. *Brooks*, 311 Ill. App. 3d at 874-75, 726 N.E.2d at 155. Also weighing in the court's decision was the presence of the general contractor's representative at the time of the accident and that the representative clearly observed the plaintiff working in an unsafe manner without the safety harness. *Brooks,* 311 Ill. App. 3d at 874, 726 N.E.2d at 155. In the present case no such contract existed between OSI and defendant. Further, as stated above, plaintiff at no time had to wait to perform his duties until he could get confirmation from defendants. He worked only under the supervision of OSI. Finally, there is no evidence that defendant Rot was on the site at the time of the accident, nor is there any evidence that he ever saw plaintiff working in an unsafe manner on the scaffold.

In *Brooks* the defendant Midwest maintained a great deal of control over the project, that is the defendant imposed a set of safety rules on the subcontractor and had the ability to stop the work, such as: (1) Midwest promulgated a set of safety rules that it imposed upon General Construction and General's employees; (2) Midwest's enforcement authority included its ability to stop work at the jobsite if its safety rules were not followed; (3) Midwest assigned a project engineer to oversee each General Construction project and, at the time of the plaintiff's accident, one of those project engineers was present; and (4) General Construction could not perform any burn work or welding without first obtaining a burn permit from Midwest. *Brooks*, 311 Ill. App. 3d at 873, 726 N.E.2d at 154-55.

In determining that it was for a jury to decide the issue of control in order to be held liable, the *Brooks* court, in interpreting section 414, stated that "under the retained control exception, an employer need only retain the control of any part of the work in order to be subject to liability for a failure to exercise his control with reasonable care." *Brooks*, 311 Ill. App. 3d at 874, 726 N.E.2d at 155. This approach does not refer to the retention of some degree of control over the manner in which work is done. Restatement (Second) of Torts §414, Comment *c* (1965). The *Brooks* decision does not refer to the *Rangel* "operative detail" analysis and distinguishes *Fris* based on its procedural posture. The *Brooks* court distinguishes *Fris* stating that the question of whether a duty existed was allowed to go to a jury, while in its case the question was not presented to a jury. *Brooks*, 311 Ill. App. 3d at 875, 726 N.E.2d at 156. Despite the broader statements regarding control, it appears the defendant in *Brooks* did control routine and incidental aspects of the independent contractor's work.

The question remains, in order to establish liability under section 414, must a plaintiff prove the defendant controlled the *Fris* "routine and incidental aspects" of the independent contractor's work or prove pursuant to *Brooks* that the defendant retained control over any part of the work and failed to exercise that control with reasonable care? The latter test of retaining control of any part of the work is more broad than the test where the defendant must retain control over routine and incidental aspects of the work, as established in *Fris*, which relates to degree of control over the manner in which the work is done. We determine, following *Fris* and the Restatement, that a defendant must retain control over routine and incidental aspects of the work, which includes an operative detail analysis.

Section 414 establishes a defendant's liability arising between the standard liability of a principal who controls an agent and the lack of liability in the traditional independent contractor relationship. The

Restatement does not provide a dictionary-style analytical definition of control. In default of a definition, the Restatement provides various illustrations and examples of what is and is not control. See Restatement (Second) of Torts §414, Comments (1965). In the common law tradition it is left to the courts to provide, on a case-by-case basis, clarity for the litigants, attorneys, and judges alike on the issue of control. The Restatement, in its comments to section 414, and Illinois case law have analyzed this section by factually determining when a defendant is or is not liable.

■ The Restatement and the case law find control under the following circumstances: when the defendant supervises the entire job and effects the means and methods of the subcontractor's work, preventing the subcontractor from working in its own way, and/or is consistently present on the jobsite directing operative detail of the subcontractor's work, or supervises the entire safety program, and fails to prevent the subcontractors from doing the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself. *E.g., Moorehead*, 354 Ill. App. 3d at 460, 821 N.E.2d at 361; *Bokodi v. Foster Wheeler Robbins, Inc.*, 312 Ill. App. 3d 1051, 1064, 728 N.E.2d 726, 736 (2000); Restatement (Second) of Torts §414, Comments *b, c* (1965). On the other hand, the defendant does not retain control when the defendant merely retains the general right to order the work stopped, or the defendant merely retains the general right to inspect work progress or process or receives reports. Restatement (Second) of Torts §414, Comment *c* (1965). In these examples, the defendant's control is what triggers liability, not a defendant's general interest in safety. This approach emphasizes the importance of the degree of control over the manner in which the work is done and is a highly factual inquiry into the degree of control over routine and incidental aspects of the work.

■ In the present case, there is not enough evidence to show that defendants retained sufficient control over the work of plaintiff so as to give rise to a duty of reasonable care under section 414. No contract existed at any point between defendants and subcontractor OSI, a factor that the *Bieruta* court took into account in finding no duty. *Bieruta*, 331 Ill. App. 3d at 276, 770 N.E.2d at 1181. Further, as testified to by both defendant Keith Rot and plaintiff, OSI supplied all of its own tools to apply the exterior finish to the wall. OSI exclusively instructed plaintiff and his fellow employees on how to actually do their job of applying the Dryvits system. At no time did defendants ever instruct

plaintiff on how to do his job. In fact, as testified to by plaintiff, he had absolutely no contact with either defendant Keith Rot or anyone from defendant RBD. Defendant Rot testified that he never supervised the OSI workers or instructed them on how to apply the exterior finish. Although defendant Rot retained the right to halt work at any time for any reason, and went on site to inspect work progress, no liability can apply unless defendant "retained control over the 'incidental aspects' of the independent contractor's work." *Rangel*, 307 Ill. App. 3d at 839, 719 N.E.2d at 178, quoting *Fris*, 255 Ill. App. 3d at 924, 627 N.E.2d at 1270; see *Steuri v. Prudential Insurance Co. of America*, 282 Ill. App. 3d 753, 668 N.E.2d 1066 (1996) (summary judgment proper where it is shown the employer delegated responsibility for the details of the work to the independent contractor); *Rogers v. West Construction Co.*, 252 Ill. App. 3d 103, 623 N.E.2d 799 (1993) (no liability found under section 414 of the Restatement when the responsibility of the general contractor is primarily focused on checking daily progress, not supervising the manner in which it is done).

With regard to the scaffold itself, defendants had no part in its construction or maintenance. The idea for the scaffold, along with the tools and instruction necessary to build it, was supplied solely by OSI. OSI had constructed and used scaffolds at various work sites before. Plaintiff had been on these scaffolds. Plaintiff participated in the construction of this scaffold and at no time had any contact with defendant regarding the scaffold. Defendant Rot testified that he had seen the OSI scaffold on the work site, but he otherwise had nothing to do with the scaffold and never inspected it. Plaintiff informed his OSI bosses that he felt the scaffold was unsafe, but continued to work on it for fear of being fired. He never at any time made his feelings known to defendants. The scaffold was purely the creation and responsibility of OSI. There is nothing to suggest that defendants knew of or had any notice of a hazard regarding the scaffold. *Bieruta*, 331 Ill. App. 3d at 276, 770 N.E.2d at 1181.

The evidence in the record establishes that defendants did not retain enough control over the routine and incidental operations of the subcontractor OSI. Defendants did not control the means and methods of OSI's work and OSI was free to perform its work in its own way. Accordingly, we agree with the trial court's determination that there was no genuine issue of material fact in dispute over defendants' control of OSI's work. Plaintiff failed to sufficiently establish that defendants retained control of the work for purposes of section 414. Thus, no duty arose to plaintiff and defendants are entitled to judgment as a matter of law. *Connaghan v. Caplice*, 325 Ill. App. 3d 245, 250-51 757 N.E.2d 971, 976 (2001).

## II

The following material is nonpublishable under Supreme Court Rule 23.

## III

For the foregoing reasons, the trial court's motion granting summary judgment is affirmed. The trial court's denial of plaintiff's leave to file an amended complaint is affirmed.

Affirmed.

LYTTON and McDADE, JJ., concur.